Pittsburg, Cincinnati, Chicago and St. Louis Ry. Co.

*v.*

Louise Smith.

*Opinion filed February 17, 1904.*

1. Appeals and errors—*when alleged error as to instructions can not be considered.* Alleged error in giving or refusing instructions cannot be considered, on appeal, unless all the instructions are set out in the abstract of record, where the instructions as to which complaint is made are of such a nature that the court's action may be justified by the character of the other instructions.

2. Trial—*special interrogatories by court should first be submitted to counsel.* Special interrogatories propounded by the court of its own motion should first be submitted to counsel for the parties, the same as must be done when one party requests a special finding.

3. Same—*when failure of court to submit special interrogatory to counsel is prejudicial.* Where the two material issues, whether plaintiff was exercising due care and whether the defendant was negligent, are controverted, it is prejudicial error for the court to submit a special interrogatory as to the question of plaintiff's care without submitting the same to the defendant's counsel, to enable him, if desired, to have a special finding as to the other issue.

*P., C., C. & St. L. R. R. Co.* v. *Smith*, 110 Ill. App. 154, reversed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Philip Stein, Judge, presiding.

Jesse B. Barton, (George Willard, of counsel,) for appellant.

Francis T. Murphy, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

This is an action on the case, brought by appellee in the superior court of Cook county, against appellant and the Chicago Terminal Transfer Railroad Company, to recover damages for injuries received by appellee on

December 8, 1899, by being struck by an engine at the crossing of appellant's track and Thirty-fifth street, in the city of Chicago. The suit was begun on April 26, 1900, and the declaration contained a single count, alleging that appellant owned the railroad tracks and the terminal company operated an engine and train thereon, and it charged negligence, generally, in the management of the engine and train causing the injury. On September 10, 1901, four additional counts were filed, charging negligence, first, in failing to ring an engine bell as required by a city ordinance; second, in failing to ring a bell or blow a whistle as required by statute; third, that the flagman at the crossing did not give reasonable warning or notice of the approach of the train; and fourth, repeating the charge that the ordinance was not complied with. On September 26, 1901, two more counts were filed, charging negligence, first, in not stationing or maintaining a flagman at the crossing, and not signaling and warning appellee, by its flagman or otherwise, of the approaching engine and cars; and second, in failing to give warning by bell, whistle, flagman or otherwise. The plea was the general issue, and there was a trial, at which appellant and the terminal company each asked the court to direct a verdict of not guilty as to it. The court granted the motion of the terminal company and instructed the jury to find it not guilty, but denied the motion of appellant and submitted the issue to the jury as to it. The court, of its own motion, directed the jury, in addition to the general verdict, to answer the following special interrogatory: "Do you find, from the evidence, that the plaintiff, by the exercise of ordinary care on her part for her own safety, just before and at the time of the accident in question, could have avoided the same?" The jury returned a general verdict finding appellant guilty and assessing the damages at $2000, and answered "No" to the question propounded by the court. Appellant appealed to the Appellate Court for the

First District, and the judgment being affirmed, prosecuted this appeal.

The following facts were proved on the trial: Thirty-fifth street runs east and west. Crossing it at right angles there are six steam railroad tracks, the west two of which are owned by appellant,—the east one for north-bound trains and the west one for south-bound trains. There are two street car tracks crossing the railroad tracks near the middle of the street. A few feet west of the west track and just north of the curb line of the street is a flagman's shanty. The accident occurred about 2:30 P. M. of December 8, 1899,—a clear, bright day. Appellee and two other women were walking west on the sidewalk on the south side of Thirty-fifth street. They crossed the other tracks, and when they came to appellant's tracks a long freight train was going north on the east track. The women stopped and stood talking while the freight train was passing. The train made a great deal of noise, especially in crossing the street car tracks. As soon as the last car had passed the sidewalk they started to cross the street. At that time. a south-bound train was approaching on the west track and was about seventy-five feet north of the street. The brakeman on the rear of the freight train saw the women as the rear of that train approached the crossing, and his attention being called by the whistle of the train on the south-bound track, he raised up and tried to call their attention, but they did not hear him.

The only charge of negligence in the declaration which the evidence tended to prove was, that the flagman stationed at the crossing failed to signal and warn appellee of the approaching danger. That is the ground now relied upon by counsel for appellee, and it is insisted that the flagman was so near the shanty that he could not be seen when the freight train cleared the crossing, and that he failed to give proper warning of the approach of the other train. The bell on the engine was ringing,

as required by ordinance and statute.  The whistle was blown before reaching the crossing and was again blown as a danger signal as soon as the women were seen on the track.  The only evidence as to the speed of the train was that it was going about ten miles an hour.

The controverted questions of fact at the trial were, whether appellee was in the exercise of proper care and whether the flagman was negligent in the discharge of his duty.  The evidence for the respective parties on those questions was directly contradictory.  The first of appellee's companions to start across testified that when the freight train got out of the way she looked to see if there was any flagman to warn them if the track was not clear, but she did not see any flagman, and as they saw no one they started over.  She passed over the crossing before the train reached it.  The second woman testified that there was no flagman east of the freight train and she did not see any flagman, and that she did not look and was not thinking of anything until she heard the noise of the train, when she jumped out of the way. Appellee testified that she looked to see if there was anything to hinder her passing over, and did not see anybody there; that the other women went on, and she looked north just as the freight train got by and saw no one on the street and that there was no one there to warn her.  She did not succeed in getting across and was struck by the engine.  They all testified that they did not hear any bell or whistle or see or hear any warning. There was a flagman stationed at the crossing and there was also a police officer of the city detailed and on duty there.  They both testified that they were standing over by the shanty when the freight train was passing; that when the other train was coming they went out on the middle of the crossing and called out to the women to look out, and warned them from coming over.  Another witness, apparently disinterested, testified that he saw the flagman and policeman in the middle of the crossing

shouting and throwing up their hands as a warning. The brakeman on the rear of the freight train testified that as he passed the crossing he heard some one yell, and at the same time the women started to cross the track.

It is assigned as error that the court refused to give certain instructions asked by the appellant. The instructions so refused are the only ones contained in the abstract. Where an instruction is of such a nature that an omission or imperfection in it may be cured by others, an alleged error in giving or refusing it will not be considered unless all the instructions are set out in the abstract. In such a case a refused instruction, although stating a correct principle of law, may have been properly refused because the point was covered by other instructions, or an instruction given which might be objectionable when considered alone would not be so regarded when considered with other instructions which were given. (*Thompson* v. *People*, 192 Ill. 79.) The instructions refused are within that rule.

It is also assigned as error that the court submitted the special interrogatory to the jury with respect to the care or want of care of appellee without submitting it to appellant's counsel before giving it to the jury. The act of 1887 provides that in any case in which the jury render a general verdict, they may be required by the court, and must be so required on request of any party to the action, to find specially upon any material question or questions of fact which shall be stated to them in writing, which questions of fact shall be submitted by the party requesting the same to the adverse party before the commencement of the argument to the jury. (Hurd's Stat. 1899, p. 1291.) The statute is mandatory, and where a party to the suit requests a special finding it must be submitted to the adverse party before the commencement of the argument to the jury. (*McMahon* v. *Sankey*, 133 Ill. 636.) The statute is not in violation of the ancient mode of trial by jury, and should be liberally construed.

(20 Ency. of Pl. & Pr. 307.)  The reply of appellee's counsel is, that while the statute is imperative that a party proposing to ask for special interrogatories shall submit them to the adverse party, it does not require the court to do so.  It is true that the legislature did not see fit to command the court; but every reason which could have moved them to require the adverse party to submit an interrogatory applies with equal force where the same interrogatory is propounded by the court without a request, and we would scarcely adopt a rule of practice that a court might be less fair and just to a litigant than the statute requires his adversary to be. There are obvious reasons for the provision of the statute.  If an interrogatory is to be asked concerning one material fact in the case a party may desire to submit other interrogatories concerning other material facts, and counsel may wish to direct their arguments to the particular point covered by an interrogatory.  It was held in *Chicago and Alton Railroad Co.* v. *Gore*, 202 Ill. 188, that it was legitimate for counsel, in argument, to review the evidence in connection with the special interrogatories, and that it was not improper practice to permit counsel to read them in connection with their argument to the jury, in order to convince the jury that they should be answered in the affirmative or negative. If it should be held proper practice for the court, of its own motion, to give an interrogatory without notice to parties, they would be deprived of the opportunities which the statute secures to them, for the mere reason that the court gives the interrogatory.  There might be cases where the submission of questions by the court without notice would not be ground for reversal, where it could be seen that there was no injurious effect; but this case cannot be regarded of that character.  There were two material and sharply controverted questions of fact: First, whether appellee was in the exercise of ordinary care for her own safety; and second, whether

appellant was guilty of negligence causing the injury. The court, by its interrogatory, submitted only one of these questions, which was a plain intimation that in the mind of the court such question was the one doubtful or controverted question in the case. There being two important questions, the court directed the jury to return a general verdict and to give an answer to one of the questions. If the interrogatory had been submitted to the counsel for appellant they might not have been willing to have an answer upon one question in the case without an answer upon the other one. We think that the failure to submit the interrogatory to counsel was prejudicial.

The judgments of the Appellate Court and the superior court are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*