## THE CHICAGO CITY RAILWAY COMPANY

*v.*

## ALFRED E. JORDAN, Admr.

*Opinion filed April 17, 1905—Rehearing denied June 8, 1905.*

1. SPECIAL INTERROGATORIES—*special interrogatories should be submitted to counsel.* Special interrogatories, although prepared by the court of its own motion, should be submitted to counsel, so as to enable them to present other interrogatories or direct their arguments against giving the ones submitted to them.

2. SAME—*when special interrogatory relates to evidentiary fact.* In an action for the death of a small boy killed at a street crossing at a point where neither he nor the motorneer could see each other until at the moment of the collision, special interrogatories as to whether the car ran into the boy or the boy ran into the car relate to immaterial evidentiary facts, and should not be given.

3. SAME—*when special interrogatory is improper as not based on the evidence.* A special interrogatory requiring the jury to say whether defendant's servants were guilty of wantonness or recklessness in driving and managing the car in question should not be given where there is no evidence of willful or wanton conduct by such servants.

4. INSTRUCTIONS—*when instruction as to wanton injury is misleading.* An instruction stating that in order to sustain a count charging defendant's servants with willfully and wantonly driving the car upon the deceased it was not necessary to prove an intention to drive the car upon deceased is misleading, where the jury are not told in that or any other instruction what it was necessary to prove to sustain the charge.

5. NEGLIGENCE—*what must be shown to sustain charge of wanton injury.* While it is not necessary, to sustain a charge of willful or wanton injury, that plaintiff prove an intention on the part of defendant's servants to drive the street car upon the deceased or that they entertained an ill-will towards him, yet it is necessary, in such case, to prove not negligence, merely, of any degree, but such conduct as will show a general intent to inflict injury.

6. SAME—*in mere negligence there is no wrongful purpose.* In mere negligence there is no wrongful purpose to do the act or omit the duty constituting the negligence complained of, but there may be such a dereliction of duty as will furnish evidence of a willful or wanton act.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

WILLIAM J. HYNES, JAMES W. DUNCAN, and C. LEROY BROWN, (MASON B. STARRING, of counsel,) for appellant.

EDGAR L. MASTERS, and IRA J. GEER, (DARROW, MASTERS & WILSON, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action on the case brought in the superior court of Cook county by appellee, as administrator, against appellant, for the death of his five-year-old son, Arthur A. Jordan. There was a judgment for $2500, which has been affirmed by the Appellate Court for the First District.

At the close of the evidence defendant asked the court to direct a verdict in its favor, and the court denied the motion.

The accident occurred at the crossing of Garfield boulevard and Halsted street at 1 :20 P. M. on a clear day. The declaration finally contained ten counts, in one of which the defendant was charged with negligence, generally, in driving and managing the car which inflicted the injury, and in others it was charged that there was negligence in failing to ring any bell or sound a gong as the car approached the place; that there was a negligent failure to keep a proper look-out, and that there was negligence in the rate of speed at which the car was run. There was a count which charged negligence in causing two cars to pass each other so near to the cross-walk as to be dangerous to pedestrians, and that the deceased was seen by the servants in charge of the car in a position of deadly peril, and they recklessly, willfully and wantonly drove the car to and upon him. There was no evidence tending to sustain the charge of willful or wanton injury. The evidence, and the only evidence, was, that the

motorman did not and could not see the boy until the instant that the boy ran against the step of the car at the side, and that he then did everything he could to stop the car. There were two other counts which the evidence did not tend to prove, one of which charged that the brakes were in a defective condition, and the other that the servants in charge of the car were incompetent, and the court instructed the jury that there was no evidence to sustain either of those counts. There was evidence, however, tending to prove the charges of negligence in failing to ring a bell or give a signal as the car reached the crossing and as to the rate of speed.

The following facts were not in dispute: On March 11, 1902, the plaintiff, Alfred E. Jordan, sent his son, the deceased, Arthur A. Jordan, a little boy five years old, on an errand on Garfield boulevard, in the city of Chicago, requiring him to cross Halsted street. Garfield boulevard runs east and west and Halsted street north and south, and there were double tracks of the defendant on Halsted street, upon which cars propelled by electricity were run. The crossing was one used by a great many people. The entire width of Garfield boulevard is about two hundred feet. There are three driveways: one on the north, another on the south, and a center driveway running east from Halsted street, with grass plats between. In going upon the errand along Garfield boulevard Arthur fell in with another little boy, Charlie McArthur, and they went across Halsted street and were returning east, holding each other by the hand. The defendant's cars were required to stop before crossing the boulevard, and there was a south-bound car on the west track on Halsted street which stopped at the north crossing. The children came up and stood on the crossing waiting for the car to move on. As the car started up they went around the rear of it, and Arthur, who was a little ahead of his companion, collided with a north-bound car that had just passed the other car. They could not see the north-bound car until they came around the rear of the other car and could not be

seen from it. Arthur came in contact with it at the side, against the front step on the west, and was knocked down and caught by the axle, and died from the injuries.

Whether there was any bell rung or gong sounded on the north-bound car was disputed, and the evidence was conflicting as to the rate of speed. There was evidence that the gong was sounded as the cars passed each other near the center of the north driveway, but witnesses for the plaintiff testified that there was no bell rung on approaching the crossing, while others testified for the defendant that there was. The north-bound car had stopped at the south side of the boulevard, and was preparing to stop again at the north side of the walk for a woman who was waiting there. As to the speed, most of the witnesses estimated the rate at two to four miles an hour, but one thought it was six or seven miles an hour and another ten. The car was a vestibuled one, about thirty feet long, and witnesses differed as to where it stopped after the accident,—whether on the crossing or north of it. Some of them said the whole car was three or four feet north of the crossing, and others that the front of the car was eight to ten feet north of the crossing, and others that it was only three to five feet north of that point. This conflicting evidence required a submission of the case to the jury, and there was no error in refusing to direct a verdict for the defendant.

Although there was no evidence tending to prove a willful or wanton injury, that question was submitted to the jury both by instructions and a special interrogatory. It was undisputed, and, in fact, a part of the plaintiff's case, that the boy could not see the car until he came around the rear of the south-bound car, and under such circumstances it was necessary that proper signal or warning should be given. The motorman could not see the boy until he was practically at the car. He collided with it at the side next the vestibule, where the motorman stood, and nothing the motorman could have done then would have averted the accident. Whoever

was right in estimating the speed of the car, it had stopped at the south side of the boulevard and was preparing to stop again to take up a passenger, and it was impossible that there could have been such a reckless rate of speed as to justify a presumption of a disregard of consequences or a willingness to inflict injury. When the accident occurred the motorman did everything he could to stop the car. The court, of its own motion and without any notice to the defendant that special interrogatories would be submitted, gave to the jury the following:

"The jury will, from the evidence, answer the following questions by writing under each of them either 'Yes' or 'No,' to-wit:

"*First*—Were the defendant's servants guilty of wantonness or recklessness in driving and managing the car in question?

"*Second*—Were the parents of the deceased, Arthur A. Jordan, or either of them, guilty of a want of ordinary care proximately contributing to the accident in question?

"*Third*—Did the deceased child run into the side of the car in question?

"*Fourth*—Did the said car run into and strike the deceased child?

"*Fifth*—Was defendant guilty of the negligence charged against it in the declaration herein, or some count thereof?"

The jury returned the special interrogatories with their verdict, with the following answers written: 1, Yes; 2, No; 3, No; 4, Yes; 5, Yes.

The third and fourth of these interrogatories would not be proper to be submitted in any case, both because they related only to evidentiary facts and because they presented the questions contained in them to the jury as material when they were not. The car and the boy approached each other at right angles, the boy going east and the car going north, and they came in contact on the crossing. Both were moving toward the same point where they ultimately came together,

and how it can be said that the car ran into the boy or the boy into the car, or what that question had to do with the liability of the defendant, we cannot discover. The absurdity of submitting to a jury such questions as material, such as, either singly or as part of a series, would control the general verdict and authorize a judgment contrary to it, seems to be apparent. The jury answered the third interrogatory "No" and the fourth one "Yes," and would naturally suppose that, in the view of the court, if the car ran into the boy the defendant would be liable. The first interrogatory directed the jury to answer whether the defendant's servants were guilty of wantonness or recklessness in managing the car, and assumed that there was evidence from which the jury might answer the question in the affirmative, as they did answer it. The fifth interrogatory was whether the defendant was guilty of the negligence charged in the declaration or any count thereof. The court instructed the jury that there was no evidence whatever to support two counts of the declaration besides the count charging a willful or wanton injury, and as the jury answered the first question in the affirmative a like answer to the fifth followed as a matter of course.

The special interrogatories were submitted without notice to counsel, and that is not a proper practice. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co. v. Smith,* 207 Ill. 486.) The provision for such submission before the argument begins enables counsel to submit other interrogatories, and also to direct their arguments to a particular point covered by an interrogatory. (*Chicago and Alton Railroad Co. v. Gore,* 202 Ill. 188.) In view of the interrogatories given to the jury in this case, it may be added that another good reason for their submission to counsel is to enable counsel to show to the court that they ought not to be submitted at all. Where there is a proposal to submit improper interrogatories the objections to them would be a proper subject for argument to the court, and although the

statute is not imperative where the court prepares an interrogatory, the reasons for the statute apply with as much force as when an opposite party submits one.

In connection with the interrogatories submitting the question whether there was a willful or wanton injury, the court gave, at the request of plaintiff, two instructions authorizing a recovery on that ground. Number 4 was one of them, as follows:

"The court instructs the jury, as a matter of law, that a willful or wanton act may be done with intent, or it may be done with such a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness, or with such gross negligence as to imply a disregard of consequences or a willingness to inflict injury. In this case, to sustain the count of the declaration charging the servants of the defendant with recklessly, willfully and wantonly driving the car in question, it is not necessary to prove that said servants intended to drive the car upon the deceased, if it was driven upon him, or that said servants entertained an ill-will against the deceased. The jury are to decide, in the light of all the facts and circumstances in evidence, and under the rules laid down in this instruction and all other instructions bearing upon the subject, whether the said servants did willfully, wantonly or recklessly drive the said car as charged in the declaration, and such a finding, if any, can only be made from and must be based upon a preponderance or the greater weight of the evidence."

This instruction, being based upon no evidence in the case, should not have been given for that reason. But it was also misleading in its nature. It begins with abstract rules which are not objectionable if made clear and properly applied to a case, but the only application of any rule to this case was to tell the jury that to sustain the count charging the defendant's servants with recklessly, willfully and wantonly driving the car in question it was not necessary to prove that the defendant's servants intended to drive the car

upon the deceased. They were not told, in that or any other instruction, what it was necessary to prove in order to sustain the charge. It is true that it was not necessary, to sustain the charge of a willful or wanton injury, that plaintiff should prove an intention on the part of the servants of the defendant to drive the car upon the deceased or that they entertained an ill-will against him, but in such case it would be necessary to prove, not negligence merely, of any degree, but such conduct as would show a general intent to inflict an injury. "In negligence there is no purpose to do a wrongful act or to omit the performance of a duty. Negligence, even when gross, is but an omission of duty. It is not designed and intentional mischief, although it may be cogent evidence of such an act." (*Chicago, Burlington and Quincy Railroad Co.* v. *Johnson,* 103 Ill. 512.) Where there is a particular intention to injure, or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes willful or wanton. In such a case there may be an actual intent to injure, or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended. The true rule was stated in the case above cited, that in negligence, merely, there is no purpose to do a wrongful act or omit the performance of a duty, but that there may be such a dereliction of duty as will furnish evidence of a willful or wanton act. Many examples of such conduct will readily occur to any one. These propositions were not fairly put to the jury by this instruction or any other one, and the jury would naturally understand from it that it was not only not necessary to show an intention to drive the car upon the deceased or show any ill-will toward him, but that negligence of a high degree was equivalent to and would be sufficient to prove a willful or wanton act. Taking the instructions and the special interrogatories together, and the answer of the jury to the interrogatory, which was based upon no evidence, it seems

clear they regarded great negligence as willful or wanton. The giving of both was clearly prejudicial.

Exception was taken to a remark made by the court concerning a paper offered in rebuttal. The question will not arise on another trial and therefore it will not be considered.

The judgments of the Appellate Court and superior court are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*