### Frank J. Owens, Administrator, Appellee, v. Baltimore & Ohio Southwestern Railroad Company, Appellant.

1. RAILROADS, § 516*—*duty to trespassers or mere licensees on right of way* A railroad company owes no duty to a trespasser or a mere licensee on its right of way except not to wantonly or wilfully injure him.

2. RAILROADS, § 583*—*when evidence insufficient to sustain recovery for death of trespasser on right of way.* In an action against a railroad company for the death of plaintiff's intestate alleged to have been caused by the defendant wantonly and wilfully driving and managing its train so that the deceased while walking along defendant's right of way was struck and killed, *held* that the evidence was insufficient to sustain a verdict for plaintiff, it appearing that the deceased had no gre̅  ᶦghts on the right of way than a mere licensee and that the ᵇ̍  ᵗ̍ ᵗᵃr did see the deceased before he was struck, and there was ᴬ̈͟ ᵉ̍ absence of proof showing or tending to show wanton or w  ᵗts or a reckless disregard of the safety of others on the ᵢ  ᵢ employees in charge of the engine.

Appeal from the City Court ᵗ  ᵗst St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. ᵗard in this court at the March term, 1914. Reversed with finc ᵗᵗf facts. Opinion filed July 28, 1914.

KRAMER, KRAMER & C ᵖBELL, for appellant; ED-WARD BARTON, of counsel.

SILAS COOK and LOUIS ᴵ  SLEY, for appellee.

*See Illinois Notes Digest, Vols. X̄  XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Frank J. Owens, administrator of the estate of Joseph L. Owens, brought this suit to recover damages occasioned by the death of his said intestate, who was struck and killed by an engine drawing one of appellant's passenger trains.

The first of the three counts of the declaration charged that the Baltimore and Ohio Southwestern Railroad Company, on July 26, 1913, while deceased was walking on its right of way in the city of East St. Louis, wantonly and wilfully drove and managed its locomotive engine and train at a high and dangerous rate of speed, to wit, twenty to thirty miles an hour, in excess of the ordinance of said city, and that by reason thereof deceased was struck by said engine.

The second count alleges the locomotive and train were wantonly and wilfully driven and managed, going at a high and dangerous rate of speed and that no bell was rung continuously, as provided by the city ordinance.

The third, that no bell was rung, no whistle sounded or warning of any kind given while said train was running at a high and dangerous rate of speed. There was a plea of the general issue followed by a verdict and judgment for five hundred dollars against the railroad company, from which it has appealed to this court, contending that the judgment should be reversed, because the trial court erred in not giving its peremptory instruction offered at the close of the evidence and also for errors alleged to have been committed by the court in regard to the instructions.

There were few witnesses who were present at the time of the accident, and as their testimony is not conflicting to any considerable extent, it can easily be determined what the true conditions were at that time, and the proofs show them to have been as follows: In the city of East St. Louis appellant has three tracks on its right of way running easterly from a street

known as Exchange avenue towards the city limits, the south track being the inbound track, the middle track the outbound track and the north track a switch. There was a space of thirty feet between the north and the south track. For a number of years persons have been accustomed to pass over appellant's right of way in going from Exchange avenue to streets and alleys east of it. The deceased was a painter, sixty-two years of age, who worked part of the time at his trade and at other times was employed about the stock yards. On the morning of July 26, 1913, Henry Grimm and Gus Roeske were in a saloon at the corner of Seventh street and Exchange avenue. Grimm and Roeske were going fishing and shortly afterwards started to the right of way, thence east along the same between the two main tracks. Soon afterwards they looked back and saw deceased following between the same tracks and from forty to seventy-five yards behind them. Very shortly after this they met a freight train coming towards them on the south track. As near as can be determined deceased crossed over from the place where he was walking between the main tracks to the space between the middle track and the switch, but about the time the freight train reached Exchange avenue Roeske again looked around and saw a passenger train of appellant's coming from the west and close upon deceased, who then appeared to be upon or north of the middle track upon which the train was coming east and some thirty yards behind them. These two were on the south side of the track, and as Roeske saw the danger of deceased he called out to him, "look out, the passenger." It was clear deceased either attempted to cross the track or was traveling along the same at this moment, at any rate he apparently did not hear the warning and was struck and killed. His body fell or was cast to the north side of the train which ran about six car lengths after striking him.

The only testimony on behalf of appellant was that of engineer and fireman. The former testified that

his place was on the south side of the engine; that he saw two men ahead of him between the two main tracks; that the bell was rung automatically and he sounded the whistle; that the two men seemed bewildered and he was afraid they would jump in front of him which caused him to blow an alarm; that he did not see deceased and did not know he had struck him until the fireman called to him, and that there was nothing to prevent him from seeing any one who might be between the engine and the two men. The fireman testified that he was putting in fire when the conductor sounded the alarm; that he raised up to see what the trouble was and saw the deceased about ten feet ahead outside the rail; that he then "hollered" and the engineer applied the brakes. Roeske testified "there was lots of whistles up there and bells rung" but that he could not tell whether the passenger train was whistling or not, while Grimm stated that the freight train kept whistling but that he could not tell whether he heard the passenger train whistle. Several other witnesses testified either that the signals were not given or that they did not hear them given before deceased was struck.

We are rather inclined to the belief that the weight of the evidence shows that signals were given by bell and whistle just before the engine reached deceased, but we do not think a decision of that question essential for the proper disposition of this case. The most that can be said in favor of deceased's rights at the time he received his injuries is that he was a mere licensee upon appellant's right of way at a point where he and others had been permitted to travel. Under the circumstances appellant owed no duty to deceased except not to wantonly or wilfully injure him, and this rule of law as applicable to this case was recognized by appellee by the fact that he charged that the injury was caused by the wantonness and wilfulness of appellant in each count of the declaration. Before appellee could recover therefor, it was necessary for him to

prove by a preponderance of the evidence that the injury was caused by the wilfulness or wantonness of appellant, or by such gross negligence on its part as to amount to wilfulness of wantonness.

In the case of *Illinois Cent. R. Co. v. O'Connor*, 189 Ill. 559, where it was attempted to recover for personal injuries received by O'Connor, who was knocked down by a passing train while he was traveling upon the railroad right of way at a point where many persons were accustomed to go, the Court said: "The plaintiff was traveling upon defendant's right of way, not for any purpose of business connected with the railroad, but for his own mere convenience, as a footway, in reaching his home on return from a search after his cow. There was nothing to exempt him from the character of a wrongdoer and trespasser in so doing further than the supposed implied assent of the company, arising from their noninterference with a previous like practice by individuals. * * * The place was one of danger, and such persons went there at their own risk, and enjoyed the supposed implied license subject to its attendant perils. At the most, there was here no more than a mere passive acquiescence in this use. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident." In the same case the Supreme Court also said: "This court is committed to the doctrine that a railroad company, in the operation of its trains, owes no duty to a trespasser upon its right of way or tracks except that it will not wantonly or wilfully inflict injury upon him, and we have frequently held that the mere fact that signals required by statutes and ordinances are not given, even though those operating its trains may have knowledge of the fact that persons have been in the habit of crossing its tracks or walking upon them at places other than public crossings or public places, will not amount to proof of wilful and wanton disregard of duty toward such trespassers."

In respect to the matters above mentioned, there is no difference in law between a trespasser and a mere licensee. In *Illinois Cent. R. Co. v. Eicher*, 202 Ill. 556, it is held: "A railroad company owes no duty to a person walking along its tracks without its invitation, either expressed or implied, except to refrain from wantonly or wilfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril; and it makes no difference in that respect whether he is a trespasser, a mere licensee or one who is on the track by mere sufferance, without objection of the company."

It has sometimes happened that the negligence of a party causing an injury is so gross and reckless as to amount to wilfulness or wantonness. In the case of *Chicago City Ry. Co. v. Jordan*, 215 Ill. 390, the rule is laid down: "Where there is a particular intention to injure, or a degree of wilful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes wilful or wanton. In such a case there may be an actual intent to injure, or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended."

Appellee insists that the engineer must have seen deceased as he approached, but the engineer testified that he did not see him and did not know that he had struck deceased until after the accident occurred. The surrounding conditions, as shown by the proofs, do not seem to us to impel the inference that the engineer must necessarily have seen deceased before the latter was struck or even that he must necessarily have done so had he exercised ordinary care. Indeed there is an entire absence of proof showing or tending to show either wantonness, wilfulness or reckless disregard of the safety of others on the part of appellant's employees in charge of the engine. The judgment in this case will be reversed, and as it appears no charge of wilfulness or wantonness on the part of appellant's

employees in charge of the engine in causing the death of appellee's decedent can be rightfully sustained, the cause will not be remanded.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment.

We find that the death of Joseph L. Owens, plaintiff's intestate, was not caused by the wilful and wanton acts of the Baltimore and Ohio Southwestern Railroad Company, appellant, as charged in the declaration.