**Pearl E. Jones, Administratrix of the estate of Edwin E. Jones, deceased, Appellant, v. William F. Kramer, Appellee.**

1. HIGHWAYS AND STREETS—*excessive speed of automobile as wilful negligence as jury question.* Whether the act of one whose automobile struck a pedestrian, in driving his car at a speed in excess of that allowed by statute or ordinance, was wilful and wanton is a question for the jury under all the facts and circumstances surrounding the transaction as shown by the evidence.

2. NEGLIGENCE—*correctness of instruction as to wilful negligence.* In an action for negligence causing the death of plaintiff's intestate, an instruction that "for an act to become wilful or wanton, under the law, it must be shown by a preponderance or greater weight of the evidence that there is a particular intention to injure, or a degree of wilful or wanton recklessness which authorized a presumption of an intention to injure generally, on the part of the person guilty of such an act," stated a correct principle of law.

3. HARMLESS ERROR—*when instruction as to materiality of allegations not prejudicial error.* In an action for negligence causing the death of plaintiff's intestate, an instruction that allegations contained in plaintiff's declaration that deceased was, at the time of the accident, crossing the street as he lawfully might and that defendant with force of arms assaulted him, are material, even if erroneous, *held*, on the record, not prejudicial.

Appeal by plaintiff from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed February 9, 1925.

A. R. IRENS and D. H. MUDGE, for appellant.

WILLIAM P. BOYNTON, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

On November 21, 1922, Edwin E. Jones, appellant's intestate, who was employed at the Illinois Glass Factory at Alton, Illinois, left his place of employment between 5:30 and 6:00 o'clock p. m., and as he was crossing Broadway street in said city he was struck and injured by an automobile driven by appellee, and within four days thereafter died from the injuries so sustained. To recover for the death of said deceased, appellant, as the administratrix of his estate, instituted suit in the circuit court of Madison county. A trial was had, resulting in a verdict and judgment in favor of appellee, defendant in the court below. To reverse said judgment, this appeal is prosecuted.

The declaration consists of three trespass counts, the last two of which charge an assault and battery.

While other errors are assigned on the record, the grounds relied on for a reversal of said cause are: First, that the verdict of the jury and the judgment thereon are contrary to the law and the weight of the evidence; second, that the court erred in giving to the jury the second and fourth instructions given on behalf of appellee.

Broadway street is paved in the vicinity in question, and near the center of the street is a double street-car track. On the northern boundary thereof is a sidewalk, and along the southern boundary are a number of railroad tracks, which lie between the fence of the glass company property and the paved portion of the street. Monument avenue in said city intersects with Broadway, and Plum street crosses it and extends through the glass works. The employees of said glass factory work in regular shifts, which enter and leave the factory at 2:00, 4:30 and 10:00 p. m., except those employees who work overtime, and they leave

between 5:00 and 6:00 o'clock. Said employees as they come from their work have been accustomed to pass out of certain gates in the vicinity in question, and from thence upon and across Broadway, crossing Broadway between Monument avenue and Plum street.

Four witnesses testified on behalf of appellant with reference to the accident and injury in question, but only one of said witnesses, Ray Camp, saw appellee's car strike appellant's intestate. This witness testified that he had driven off of Plum street to the north side of Broadway, turned to the left, and that as he proceeded west on Broadway he straddled the rail of the westbound or north track of said street railway; that he saw an automobile coming, which he afterwards ascertained to be appellee's; that appellee's automobile "was right in front of me when I first observed it, and was going east. Kramer was on the same track that I was on, the westbound track. Mr. Jones was about the center of the street when I first saw him, and was running across the street. Mr. Jones was in the center of the westbound track when struck, between the rails, and was struck by Kramer's automobile. Mr. Jones was not thrown very far." This witness further testified that appellee's car, prior to the accident, was running about eighteen or twenty miles per hour, and that the lights on said car were burning. On cross-examination he stated that the place where appellant's intestate was crossing said street was not an intersection, and that "after Kramer hit him (appellant's intestate) he stopped within about three feet."

Harry Scott, one of the witnesses for appellant, testified that just prior to the time in question he stopped on Broadway, waiting for an eastbound street car; that the witness Camp crossed the tracks about the center of the street on the north side and turned west; that he "heard his brakes squeak and looked over

and saw the two automobiles standing there. They had come to a stop. * * * At that time I saw the two automobiles standing there, three feet apart, and both on the north side of the street, with Camp's car headed west and the other east. I did not see Mr. Jones struck." This witness testified that the automobile driven by appellee was traveling at the rate of twenty miles per hour, or more.

Louis Beiser testified on behalf of the appellant that he was about midway of the block on Broadway at the time of the accident; that "he heard a crash and looked up and saw Mr. Jones rolling towards the sidewalk on the north side of the street"; but that he did not see him struck. He further testified that when appellee's automobile stopped, it was on the north track and pointing directly east.

Henry Hefner, another of appellant's witnesses, testified that he was on the sidewalk on the north side of Broadway when the deceased was struck; that he did not see the automobile strike appellant's intestate, but heard glass hit the pavement, which drew his attention, and that he saw the deceased lying on his back within four feet of the curb. He further testified "this automobile was on the north side of the street and facing east," and about twelve feet from where appellant's intestate was lying.

Three witnesses on behalf of appellee testified to the effect that, prior to the time of the collision, appellee was driving his car at about the rate of fifteen miles per hour. William E. Laux, one of said witnesses, testified that he was driving in his automobile, following appellee as he proceeded east on Broadway; that "Kramer was south of the eastbound track; that as he approached Plum street he made a quick turn across the track and his car then faced northeast, and then stopped. * * * I saw then that somebody was struck. * * * When Kramer stopped his car, it was between the east and westbound tracks; that would be on the north side of the street."

Leland Laux, a son of William E. Laux, was riding with his father at the time, and testified: "I noticed him (appellee) turn to the left, made a quick turn, that was closer to Plum street than to Monument avenue. He turned to the north and stopped there. His car was then pointed to the north. His car was then further to the left than the right side." He further testified that he did not see appellant's intestate struck.

An affidavit was read in evidence to the effect that one Reid Crowder, if present, would testify to the following: That he (Crowder) saw the deceased just prior to and at the time of the accident; that said deceased "stepped in front of the automobile so being driven by Kramer when such car was about ten feet from said Jones, and that the driver of the car, Kramer, swung his car to the left or the north, and reduced his speed. * * * The defendant Kramer stopped within about six feet after he struck the deceased. When the deceased stepped in front of Kramer's car, he did not look up, and was going in a northwesterly direction."

This is the substance of all of the evidence offered by either side with reference to the speed of appellee's car and as to what transpired just prior to and at the time of the accident.

The theory of counsel for appellant is set forth on page 14 of their brief, as follows:

"In this case the plaintiff did not undertake to prove that the defendant Kramer had his mind made up to injure Edwin E. Jones before the time that he did injure him, and did not undertake to show recklessness or negligence of such magnitude and grossness as to create a presumption of wilfulness. But the plaintiff in the presentation of this case did charge and prove that the defendant was engaged in violating the motor vehicle law of this State, which was an unlawful act on the part of the defendant, and while so engaged, did strike and injure Edwin E. Jones."

That there was no actual intention to injure appellant's intestate is conceded on the part of counsel for appellant, but it is contended that inasmuch as the evidence tends to prove that the place in question was a built-up business district, and that appellee prior to and at the time of the collision in question was driving his automobile in excess of ten miles per hour, and while so driving said car, struck and fatally injured appellant's intestate, that this warrants a recovery against appellee without reference to whether appellant's intestate was, just prior to and at the time of the accident, guilty of contributory negligence, and without reference to whether or not appellee intentionally injured him.

It has been repeatedly held that the violation of the speed limit fixed by statute, or the violation of the provisions of a city ordinance regulating the driving of vehicles, is not of itself proof of wilfulness in the infliction of an injury upon a person, though such violation be an unlawful act. *Illinois Cent. R. Co. v. Hetherington*, 83 Ill. 510; *Blanchard v. Lake Shore & M. S. Ry. Co.*, 126 Ill. 416; *Illinois Cent. R. Co. v. O'Connor*, 189 Ill. 559; *Pittsburg, C., C. & St. L. Ry. Co. v. Kinnare*, 203 Ill. 390; *Enochs v. Trevett*, 229 Ill. App. 235-240. Under the foregoing authorities, it does not follow as a matter of law that the act of appellee in driving at a speed in excess of ten miles per hour through said business district was a wilful and wanton act. Whether or not such act was wilful and wanton was a question for the jury under all of the facts and circumstances surrounding said transaction, appearing in evidence. *Illinois Cent. R. Co. v. Leneir*, 202 Ill. 624; *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464; *Heidenreich v. Bremner*, 206 Ill. 439; *Jeneary v. Chicago & I. Traction Co.*, 306 Ill. 392-397; *Chicago City Ry. Co. v. Jordan*, 215 Ill. 390. In the latter case the court at page 397 says:

"It is true that it was not necessary to sustain the

charge of a wilful or wanton injury that plaintiff should prove an intention on the part of the servants of the defendant to drive the car upon the deceased, or that they entertain any ill-will against him, but in such case it would be necessary to prove, not negligence merely of any degree, but such conduct as would show a general intent to inflict an injury. 'In negligence there is no purpose to do an unlawful act or to omit the performance of a duty. Negligence, even when gross, is but an omission of duty. It is not designed and intentional mischief, although it may be cogent evidence of such an act.' '' Citing *Chicago, B. & Q. R. Co. v. Johnson,* 103 Ill. 512.

In *Jeneary v. Chicago & I. T. Co., supra,* the court at page 398 says:

"An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness such as charges the person whose duty it was to exercise care with the consequences of a wilful injury." Citing *Walldren Express & Van Co. v. Krug,* 291 Ill. 492; *Bernier v. Illinois Cent. R. Co., supra.*

We are of the opinion and hold that under the evidence in this case, as herein set forth, it was for the jury to say whether appellee, just prior to and at the time of the collision, in driving his automobile at a speed of from fifteen to twenty miles per hour, was guilty of wilfully and wantonly injuring appellant's intestate, and we are not disposed to disturb their verdict on said issue.

It is next contended by appellant that the court erred in giving the second and fourth instructions given on behalf of appellee. The second instruction is as follows:

"The jury are instructed that for an act to become wilful or wanton, under the law, it must be shown by

a preponderance or greater weight of the evidence that there is a particular intention to injure, or a degree of wilful or wanton recklessness which authorized a presumption of an intention to injure generally, on the part of the person guilty of such an act; otherwise there is no authority in law to conclude that an injury was intended, or that such an act on the part of the person complained against was either wilful or wanton."

Without going into a discussion of the objections made to this instruction, it is only necessary to say that this instruction states a correct principle of law, as laid down by the authorities heretofore cited.

The fourth instruction is as follows:

"The court instructs the jury that in the second count and the third count of the plaintiff's declaration he charged that the deceased, Edwin E. Jones, was at the time of the accident in question crossing East Broadway, 'as he lawfully might,' and that the defendant Kramer 'with force and arms assaulted the said Edwin E. Jones.' You are instructed that these are material allegations of the second and third counts of the plaintiff's declaration."

The objection to this instruction is that the court instructed the jury that the allegation in appellant's declaration to the effect that appellant's intestate was at the time of the accident in question crossing East Broadway "as he lawfully might," was material and necessary to be proved. Appellee, in answer thereto, insists that it does not lie in the mouth of counsel for appellant to raise this question, inasmuch as it was one of the allegations of appellant's declaration.

While the court may have been in error in instructing the jury that this was a material allegation, we are of the opinion and hold that, on the record in this case, appellant was not prejudiced by giving of this instruction. The instruction did not direct a

verdict, and, taken as a whole, there was no reversible error in the giving of the same.

Counsel for appellant insists that this case is very similar on the facts to the case of the *People v. Falkovitch*, 280 Ill. 321. An examination of. that case, however, will disclose that the facts are materially different from the facts in this case.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*