## Louis Provenzano, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 36,700.

476

Opinion filed November 21, 1933.    Rehearing dénied December 4, 1933.

FRED H. MONTGOMERY, for appellant; EDWARD C. CRAIG and VERNON W. FOSTER, of counsel.

GUERINE & BRUST, for appellee; GUY C. GUERINE, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant to recover damages for personal injuries and property loss sustained as the result of a collision between a truck owned and driven by plaintiff and a train of defendant, at a grade crossing in Hillside, Cook county, Illinois, on August 18, 1928. A jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $4,000. Defendant has appealed from a judgment entered upon the verdict.

In a former trial of this case there was a directed verdict for defendant at the close of plaintiff's case. Upon appeal we held (*Provenzano v. Illinois Cent. R. Co.*, 263 Ill. App. 530) that plaintiff's evidence made out a clear *prima facie* case against defendant and that the trial court erred in directing a verdict. To save repetition we refer to our former opinion for a statement of the pleadings, the *locus in quo* and plaintiff's theory of fact.

Defendant contends that "the trial court erred in sustaining plaintiff's demurrer to defendant's special plea invoking provisions of the Workmen's Compensation Act in defense of plaintiff's claim for damages for personal injuries." Almost five years after the accident occurred, during the second trial of this cause and at a time when plaintiff had offered most of his proof, defendant asked leave to file this special plea. Counsel for defendant admitted to the trial court that in the first trial they had not attempted to interpose the defense raised by that plea, and they gave no excuse for their dilatory conduct. Plaintiff urges a number of grounds in support of the court's action in sustaining the demurrer to this plea, but it is unnecessary to refer to all. The plea assumes, in the introductory part, to answer the whole declaration, as follows: "Now comes the defendant, . . . leave of court being first had and obtained, and for a further and special plea herein says that the plaintiff, Louis Provenzano, ought not to have and maintain his aforesaid action against it, the said defendant, because the defendant says," etc. The plea is clearly bad as against the claim for property damage, as the Workmen's Compensation Act provides compensation only for accidental injuries or death. In *Gebbie v. Mooney*, 121 Ill. 255, 257, the court said:

"Chitty says: 'If a plea profess, in its commencement, to answer the whole cause of action, and afterwards answers only a part, the whole plea is bad,' and he says the proper course is to demur. 1 Pleadings (7th Am. ed.) 554, * 555."

"A special plea in bar, which commences as an answer to the whole declaration, and answers only one count, is bad, and where it professes to answer the whole declaration, but only answers a part, it is bad." (Puterbaugh's Com. Law Pl. & Pr. (10th ed.) p. 114.)

"It is to be observed, that a plea which only contains an answer to part of the declaration must be qualified accordingly in the commencement." (Ib.)

"It is a familiar rule, that a plea which professes to answer the whole declaration, but only answers a part, is bad; that principle controls here. The demurrer will have to be sustained to the two pleas." (*Peabody v. Kendall*, 145 Ill. 519, 526.)

(See. also *Titcomb v. Straight*, 57 Ill. App. 331, 332; *Kopf v. Yordy*, 200 Ill. App. 409, 415; *City of Marshall v. C., C., C. & St. L. Ry. Co.*, 80 Ill. App. 531, 535; *Hartzell v. Cincinnati, H. & D. Ry. Co.*, 218 Ill. App. 553; *People v. McClellan*, 137 Ill. 352, 359; *People v. McCormack*, 68 Ill. 226; *Goodrich v. Reynolds, Wilder & Co.*, 31 Ill. 490, and *People v. Weber*, 92 Ill. 288, 291.) In Puterbaugh, pp. 114–5, the author gives the various forms used where qualification is necessary. Defendant's position, as we understand it, is that plaintiff, the Central Lime & Cement Company and defendant were all operating under the Workmen's Compensation Act, and were subject to its provisions; that any claim the plaintiff may have as the result of the accident must be determined in the first instance by the industrial commission, and that the only jurisdiction the circuit court would have would be to review, by a writ of certiorari, the action of the commission. In other words, defendant's special plea is one to the jurisdiction of the circuit court. It requires no authorities in support of the established rule that a plea that seeks to oust a circuit court of jurisdiction for matters not appearing from an inspection of the record must be certain to every intent and must contain proper averments of facts accurately and logically stated, excluding every intendment of jurisdiction; and deductions, arguments, inferences and conclusions of the pleader are not sufficient. Tested by this rule the plea is not sufficient,

We may add that after carefully considering that part of the record that bears upon the instant question we are impressed with the fact that the plea was offered more for the purpose of appeal than for any benefit that might have been gained during the trial of the case, had the demurrer been overruled.

Defendant next contends that the third count of the amended declaration is insufficient to charge a wilful and wanton injury. No demurrer was filed to this count, and neither at the close of plaintiff's case nor at the close of all the evidence did defendant offer a separate motion and a separate instruction as to it. Not only did defendant fail to challenge, in any apt way, the sufficiency of the count, but its instructions ten and eleven are based upon the theory that plaintiff had the right to recover if the jury found from the evidence that the defendant was guilty of wilful and wanton conduct in the operation of its train which proximately caused the injury in question, and having, by its conduct, permitted the case to be submitted to the jury upon that theory, it should not now be heard to contend that the third count was insufficient. Count three alleges, *inter alia,* that "the plaintiff was possessed of and was lawfully driving a certain automobile truck upon and along a certain public highway there, to-wit, Harrison Street, in a westerly direction, at near and over a certain crossing of the said public highway and a certain railroad of the defendant, . . . and the defendant was then and there possessed of a certain locomotive engine, with a train of cars then attached thereto, which said locomotive engine and train were then and there under the care and management of divers then servants, agents and employees of the defendant, who were then and there driving and operating the same upon and along the said railroad, near and toward and over the crossing aforesaid; and the plaintiff avers that the defendant, by its then

agents, servants and employees, drove, managed, and controlled said locomotive engine at near and over said crossing *in a wilful and wanton manner,* and drove, managed and ran said locomotive engine on upon and over said crossing into, upon and against the said automobile truck of the plaintiff, then and there proceeding on, upon and over said crossing, and thereby the plaintiff was then and there thrown with great force and violence from and out of the said automobile truck,'' etc. (Italics ours.) Defendant's major contention is that this count ''does not attempt to charge the defendant with negligence in the manner in which it operated the train over the crossing; but only that it operated the train 'in a wilful and wanton manner.' It is not charged or attempted to be charged that the defendant was guilty of a conscious act, from which injury would likely or probably result; and it did not charge that the defendant was guilty of reckless indifference to consequences; nor that it intentionally did some wrongful act or omitted some known duty, which produced the injurious result.'' Even if it be conceded that the count would be obnoxious to a demurrer the question here is, Is it sufficient, after verdict and judgment. Century dictionary defines ''wilful'' as follows: ''Due to one's own will; spontaneous; voluntary; deliberate; intentional: as, *wilful* murder; *wilful* waste.'' Webster defines it as follows: ''Self-determined; voluntary; intentional; as *willful* murder.'' Century dictionary defines ''wanton'' as follows: ''Characterized by extreme recklessness, foolhardiness, or heartlessness; malicious; recklessly, disregardful of right or of consequences: applied to both persons and their acts.'' Webster defines it as follows: ''Reckless; heedless; malicious; as, *wanton* mischief.'' In *Hull v. Seaboard Air Line Ry.,* 76 S. C. 278, 281, it is said:

"Each of the words, wantonness, wilfulness and recklessness, embodies the element of malice, either express or implied, and are in law substantially the equivalent of each other, in so far as they give rise to an action based upon punitive damages."

In *Palmer v. Smith*, 147 Wis. 70, 75, it is said that the word "wanton" means "without reasonable excuse, and implies turpitude," and "such a degree of rashness as evinces a total want of care, . . . or willingness to destroy, although destruction itself may have been unintentional." See also *Walldren Express Co. v. Krug*, 291 Ill. 472, 478, as to the meaning of the words "wanton" and "wilful." In that case the court said (p. 479):

"In *Chicago City Railway Co. v. Jordan*, 215 Ill. 390, we said: 'Where there is a particular intention to injure, or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes willful or wanton. In such a case there may be an actual intent to injure or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended.' *A charge of wantonness implies an act intentionally done in disregard of another's rights, designed and intentional mischief, and not a mere negligent omission of duty.*" (Italics ours.)

In *Jeneary v. C. & I. Traction Co.*, 306 Ill. 392, the count charged that the defendant wilfully and wantonly ran its train against plaintiff and injured him, and the court held that the plaintiff had the right to recover under such count. (See also *Brown v. Illinois Terminal Co.*, 319 Ill. 326.) We are not prepared to concede, as defendant contends, that the count should be held to be fatally defective after verdict and judgment, especially when it is clear that defendant conducted its defense upon the theory that the count was

good. The following statement of Mr. Justice Taylor in *Williams v. Kaplan*, 242 Ill. App. 166, 180, seems particularly applicable here:

"The manifest tendency of the law as shown by the decisions is towards less rigor in the technique of pleading, provided, of course, the defendant's rights are not thereby endangered or impaired."

We are strongly opposed to the further contention of defendant that if the verdict cannot be sustained upon the theory of wilful and wanton injury the judgment must be reversed. In support of this last contention defendant relies upon *Grinestaff v. New York Cent. R. R.*, 253 Ill. App. 589; *O'Neall v. Blair*, 261 Ill. App. 470, and *Streeter v. Humrichouse*, 261 Ill. App. 556. We are in entire accord with the specially concurring opinion of Mr. Justice O'Connor in *Price v. Bailey*, 265 Ill. App. 358, 365, in which case the first division of this court very emphatically and justly disagreed with the holding in the said cases that a general verdict in a personal injury case should be set aside where some counts charged defendant with negligence and others with wilful and wanton conduct and there was no evidence to sustain the wilful and wanton counts. The same division, in the later case of *Hawkins v. McClun*, 266 Ill. App. 601 (abst. opinion), in an opinion written by Mr. Justice McSurely, adhered to its position in the *Price* case.

Defendant contends that the evidence is insufficient to support a charge of wilful and wanton injury.

"Whether the negligent conduct of a defendant which has resulted in injury to another amounted to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences or a willingness to inflict injury." (*Walldren Express Co. v. Krug, supra,* 476.)

(See also *Jeneary v. C. & I. Traction Co., supra,* 397.)
As stated in *Brown v. Illinois Terminal Co., supra,*
331:

"Courts have recognized the difficulty of accurately
stating under what circumstances a defendant may be
held guilty of willful and wanton misconduct in caus-
ing an injury. Such conduct imports consciousness
that an injury may probably result from the act done
and a reckless disregard of the consequences."
Defendant has argued the instant contention upon the
assumption that "the collision occurred on a country
crossing," whereas the accident occurred at the Harri-
son street crossing in the village of Hillside, Cook
county, Illinois. Adjoining Hillside is the village of
Bellwood. In the opinion we filed upon the former
appeal there is a fairly complete statement of the
*locus in quo.* The Harrison street crossing is the cen-
ter of Hillside and near by the village hall, police
department, fire department and a public school are
located. A short distance east of the crossing the
track is built through a cut or defile, and it crosses
Harrison street at a sharp angle. Plaintiff's evidence
in the second trial as to the alleged obstructions to the
view of the train as it approached the crossing is simi-
lar to that given in the first trial. From the testimony
of both sides it is clear that from the time the train
came out of the cut until it reached the crossing but
two or three seconds elapsed. There were no gates,
nor signal lights, nor a watchman at the crossing, and
plaintiff's evidence was to the effect that there was no
bell rung nor whistle blown on the train as it ap-
proached the crossing, and that the train, as it came
out of the cut, was traveling at the rate of 50 to 60
miles per hour. Defendant introduced evidence to the
effect that the bell was ringing and the whistle was
blown as the train approached the crossing, but the
effect of this evidence was seriously affected by the

testimony of the railway mail clerk, ''in the service of the United States Postal Department,'' a witness for defendant, who testified that it was the duty of the engineer to give him the station whistle when the train was a mile east of the depot and that the engineer did give him that whistle *when the train was a mile east of the depot* and that he then, in the performance of his duties, opened the door of his car to look out and that the engineer ''had started on the second series of whistles when the accident took place.'' The engineer testified that he was familiar with the situation, that he knew that the road was being used by trucks for hauling material and that as he approached the intersection ''there are three crossings, one right after the other. There is a school right there at Wolf Road crossing. There is a school, city hall and fire station, I believe, there at Wolf Road crossing. I was going through there at 55 miles an hour. . . . The train was moving about 85 feet per second, traveling at 55 miles an hour. It did not take very long for that train to get to the crossing after it came out of the cut.'' He further testified that when he was about 1,000 feet away from the crossing he ''saw this truck coming down Harrison Street'' and that ''he (plaintiff) beat me a little bit'' to the crossing; that he watched the truck from the time he first saw it and that when the train was within 250 feet of the crossing he became afraid that the driver of the truck did not know there was a train approaching and that he then sounded two long and two short whistles but that he could not possibly then have stopped his train, at the speed at which it was going, in less than 500 feet. As tending to support the contention of plaintiff that the engineer made no effort to stop his train, after he observed plaintiff in a position of danger, from plaintiff's evidence it appears that Wolf road is ''about 1,000 or 1,100 feet west of Harrison Street crossing,'' and, that when the

engineer got off the engine, after the train had stopped, it was on the other side of the Wolf road crossing. The fireman testified that the train stopped "right east of Wolf road. I don't know exactly how close." While the engineer testified that he did not see other trucks passing over the crossing, testimony for plaintiff was to the effect that there were several other trucks that had just passed, or were about to pass, over the crossing at the time of the collision. The contention of plaintiff that when the entire testimony of the engineer is carefully considered, it tends to show a wilful and wanton recklessness in approaching and passing over the crossing, is not without force. Under all the facts and circumstances, we are of the opinion that we would not be warranted in holding that there was no evidence tending to prove wilful and wanton conduct.

Defendant contends that the trial court should have directed a verdict for defendant. Upon the former appeal a like contention was made and we held that it was without merit. The evidence for plaintiff, upon the second trial, was as strong as upon the first trial, and the instant contention is without merit.

Defendant contends that the verdict of the jury is clearly and manifestly against the preponderance of the evidence. After a careful consideration of the evidence we have reached the conclusion that this contention is without merit.

Defendant contends that the court erred in giving, at the request of plaintiff, instructions seven and eight. This contention is based upon the assumption that count three "was a futile attempt to charge a wilful and wanton injury," and we have already passed upon that contention. Moreover, defendant's instructions ten and eleven, as we have already stated, are based upon the theory that plaintiff had the right to recover upon count three, if the evidence warranted it. We are

unable to understand upon what facts defendant bases its contention that it was injured by the ruling of the court in respect to count three and the giving of these two instructions. The jury allowed plaintiff $4,000. The uncontradicted evidence shows that the truck was worth, at the time of the accident, between $3,000 and $3,500, and that it was sold, after the accident, for $300. After the accident plaintiff was unable to work for four months. During that period he was taking "diathermic treatments" for his spine at the Oak Park hospital and the County hospital. His arms and legs were "all banged up and cut and bruised." He had a stitch under his nose and a cut over his right eye. At the time of the trial he was still taking "diathermic treatments." Four months after the accident he obtained "an easy job at the Western Electric as inspector." It is evident from uncontradicted evidence that the jury did not award punitive damages. In fact, plaintiff, not the defendant, might justly complain of the size of the verdict. Nor do we find any substantial merit in the further contention of defendant that the court erred in giving, at the request of plaintiff, instruction four.

We find no merit in defendant's contention that the court admitted incompetent evidence on behalf of plaintiff and excluded competent evidence offered by it.

The court, at the instance of defendant, gave twenty-one instructions, some of which are properly subject to serious criticism. In any event, defendant's rights were fully protected by the instructions.

Defendant has had a fair trial and the judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

Sullivan, P. J., and Gridley, J., concur.