ORRIN SHERMAN *et al.*, plaintiffs in error, *v.* HENRY GASSETT *et al.*, defendants in error.

*Error to Cook Co. Court.*

To a *scire facias* to foreclose a mortgage, the defendants pleaded the usury laws of Massachusetts, alleging in substance, their indebtedness to plaintiffs; that in order to obtain forbearance thereon, they executed certain notes therefor, payable in Boston at intervals, with ten per cent. interest semi-annually, which notes were intended to be secured by the mortgage sued on; and that, though the notes appear on their face to have been executed in Chicago, they were in fact executed in Boston. The mortgage was acknowledged and recorded in Cook county, on the day of its date: *Held,* that the forfeiture provided for in the usury laws of Massachusetts being a part of the law of remedy, could not be enforced by the Courts of this State.

It is a well settled rule, that the Courts of one country will not enforce either the criminal or penal laws of another; nor will they carry out or be guided by the laws of another, regulating the forms of actions, or the remedies provided for civil injuries. But it is equally well settled, that in the construction of contracts, and in ascertaining whether they are valid, the law of the country where the contract was made, or to be performed, shall, in general, govern.

The *lex loci* only governs in ascertaining whether a contract is valid and what the words of the contract mean. When the question is settled, that the contract of the parties is legal, and what is the true interpretation of the language employed by the parties in framing it, the *lex loci* ceases its functions, and the *lex fori* steps in and determines the time, the mode and the extent of the remedy.

To a *scire facias* to foreclose a mortgage, a plea commencing as a plea of part payment, and concluding by praying judgment, was interposed, to which there was a general demurrer which was sustained: *Held,* that payment in part, or in whole, might properly be pleaded, and that, in this case, if the plea had been specially demurred to, it should have been held bad.

SCIRE FACIAS, to foreclose a mortgage, issued from the Cook County Court, at the instance of the defendants in error, against the plaintiffs in error. The cause was heard before the Hon. Hugh T. Dickey, on demurrers to pleas. The demurrers were sustained, and the defendants brought their writ of error to reverse the decision of the Court.

The substance of the pleas are stated in the Opinion of this Court.

*A. T. Bledsoe,* argued orally for the plaintiffs in error. Written arguments were submitted by *J. Y. Scammon & N. B. Judd,* upon the same side, and by *A. Cowles & W. H. Brown,* for the defendants in error, both of which were mislaid and were not received by the Reporter.

*L. Trumbull* argued orally for the defendants in error.

1.  The pleas of usury are defective in not averring that the law of Massachusetts, set out in said plea, was in force at the time of the execution of said mortgage, and of filing said pleas.

None of said pleas, or the plea of payment profess to answer the whole cause of action, and the plaintiffs were at liberty to treat all of said pleas as nullities, and take judgment as by *nil dicit,* or they might demur.  Gould's Pl. 363; *Fitzgerald* v. *Hart,* 4 Mass. 429; 11 Pick. 75; *Sterling* v. *Sherwood,* 20 Johns. 206; *Hickok* v. *Coates,* 2 Wend. 421; *Slocum* v. *Despard,* 8 do. 617; *Phelps* v. *Sowles,* 19 do. 547; *Mee* v. *Tomlinson,* 31 Eng. Com. Law R. 66.

The Judge who tried this cause below, certifies that the plea of payment was not passed upon by him upon the argument, and the attention of the Court below not being called to said plea, it is too late to urge in this Court for the first time, that said plea was sufficient.  *Gelston* v. *Hoyt,* 13 Johns. 575; *Bell* v. *Bruen,* 1 Howard's (U. S.) R. 187; 3 do. 530.

2.  The mortgage being made and executed in Illinois, must be governed by the laws of Illinois.  *Chapman* v. *Robinson,* 6 Paige, 627.

3.  The statute of Massachusetts does not make a contract for taking more than six per cent. void, but applies to the remedy and inflicts a penalty.  Rev. Stat. Mass. 307.

Penal laws are local.  Story's Confl. of Laws, § 619, *et seq.*  Remedies upon contracts are governed by the law of the place where the action is instituted.  2 Kent's Com. 462.

That the statute of Massachusetts is penal, and applies to the remedy only, is established by her own Courts.  *Gale* v. *Easton,* 7 Metc. 14.

The Opinion of the Court was delivered by

LOCKWOOD, J. The plaintiff below sued out of the County Court of Cook County, a *scire facias* against Sherman & Pitkin, to foreclose a mortgage, dated September 1st, 1842. The mortgage was duly acknowledged and recorded on the day it bears date, and was executed to secure the payment by the mortgagors to the mortgagees of three several promissory notes, amounting to the sum of $7000, dated the 15th of June, 1842. The time when the notes were to fall due, is not stated in the mortgage, but the *scire facias* avers they had all fallen due. The mortgage recites that Sherman & Pitkin are residents of the county of Cook, in the State of Illinois, and the plaintiffs below are residents of the State of Massachusetts. Sherman & Pitkin pleaded four special pleas of usury, in violation of the laws of Massachusetts, and a plea of part payment. To all these pleas, Gassett & Co. severally demurred, and the Court sustained the demurrers, and rendered judgment for the plaintiffs for the amount due on the mortgage, and that the mortgaged premises be sold.

The errors relied on, are the sustaining the demurrers to all the pleas of the defendants. The four pleas of usury are substantially alike, and aver that Sherman & Pitkin being largely indebted to Gassett & Co., who were merchants, residing and doing business in the city of Boston, for goods previously sold to them, on the 15th day of June, 1842, in order to obtain forbearance on said indebtedness, it was corruptly agreed that Sherman & Pitkin should execute to Gassett & Co. three several promissory notes, payable in twelve, twenty four and thirty six months, at Gassett & Co's. office in Boston, with interest at the rate of ten per cent. per annum, payable semi-annually. The pleas state that the notes, although they appear on their face to have been executed in Chicago, in this State, yet were executed in Boston.

These pleas further aver, that the mortgage recited in the *scire facias*, was executed to secure the payment of said notes. The pleas further aver, that on the 15th of June,

1842, it was provided and enacted by the laws and statute of the Commonwealth of Massachusetts, of which Commonwealth Boston was the capital, "that the interest of money should be six dollars and no more upon one hundred dollars for a year, and at the same rate for a greater or less sum, and for a longer or shorter time;" and that, "whenever an action shall be brought upon any contract or assurance, and it shall appear upon special plea to that effect, that a greater rate of interest has been directly or indirectly reserved, taken or received, the plaintiff shall forfeit three-fold the amount reserved or taken, and shall have judgment for the balance only, which shall remain due after deducting said three-fold amount." The defence set up in the defendants' pleas of usury, is unconscientious and inequitable, and should not be sustained unless some stern rule of law requires it. In equity the original debt and legal interest are justly due, notwithstanding an agreement to pay more than legal interest. Where a creditor, however, has acted oppressively towards his debtor, or has evinced a manifest disposition to violate the laws of the country where the contract is made or to be performed, justice requires that Courts should be astute in ascertaining if there be not some rule of law that will enable them to punish the oppressive creditor, or the wilful violater of the law. These pleas, instead of disclosing any oppression on the part of Gassett & Co. towards Sherman & Pitkin, clearly evince a great degree of forbearance and lenity. Sherman & Pitkin were residents of the State of Illinois, where it was legal to stipulate for the payment of twelve per cent. interest; consequently, the agreement to pay ten per cent. did not violate any law of this State. What law, then, has been violated by the contract between the parties? It is apparent that the mortgage was executed in Illinois, for it was acknowledged and recorded in Cook county, on the day it bears date, and as it does not specify any place of payment, were it not for the notes recited in the pleas, the legal presumption would be, that the mortgage was payable in Illinois, where the land was situated and the mortgagors resided, and in that event, the mortgage

Sherman *et al. v.* Gassett *et al.*

would be free from any taint of usury. The pleas, however, aver that the mortgage was executed to secure the payment of three promissory notes, with ten per cent. interest, which notes, it is alleged, were executed in Boston and made payable there.

It is a well settled rule of jurisprudence, that the Courts of one country will not enforce either the criminal or penal laws of another. Nor will the Courts of one country carry out or be guided by the laws of another regulating the forms of actions, or the remedies provided for civil injuries. But it is equally well settled, that in the construction of contracts and in ascertaining whether they are valid, the law of the country where the contract was made or to be performed shall in general govern. It might in this case be urged, with great propriety, that a mortgage on real estate should be governed by the *lex situs*, and consequently not be affected by the usury laws of the place where it may have been executed, or where the money is to be paid; the presumption being that the parties must have had the laws of the country in view where the land was situated, and where suit must be instituted in case of foreclosure. The case of *Chapman* v. *Robinson*, 6 Paige, 627, was decided on this principle. In that case a loan was negotiated in England, where the creditor lived, to be secured by personal security and a mortgage on real estate in New York, where the borrower resided. Seven per cent. interest was reserved in the mortgage, which was higher than the rate of interest allowed by law in England, although authorized by the laws of New York. Chancellor Walworth, in delivering his Opinion, says: "Upon a full examination of all the cases to be found upon the subject, either in this country or in England, none of which, however, appear to have decided the precise question which arises in this case, I have arrived at the conclusion that the mortgage executed here, and upon property in this State, being valid by the *lex situs*, which also is the law of the domicil of the mortgagor, it is the duty of this Court to give full effect to the security, without reference to the usury laws of England, which neither party intended to violate, by the

execution of a mortgage upon the lands here." The Chancellor, in that Opinion, further says: "But if a contract for the loan of money is made here, and upon a mortgage of lands in this State, which would be valid if the money was payable to the creditor here, it cannot be a violation of the English usury laws, although the money is made payable to the creditor in that country, and at a rate of interest which is greater than is allowed in England." This question was fully and ably examined by Judge Martin, in the case of *Depeau* v. *Humphreys*, in the Supreme Court of Louisiana, (20 Martin, 1,) and that Court came to the conclusion, in which the Chancellor says he fully concurs, "that in a note given at New Orleans, upon a loan of money made there, the creditor might stipulate for the highest legal rate of conventional interest allowed by the laws of Louisiana, although the rate of interest thus agreed to be paid was higher than that which could be taken upon a loan by the laws of the State where such note was made payable." The Chancellor continues: "Here the verbal contract for a loan upon the security of a mortgage on lands in this State, was wholly inoperative, until the mortgage and other written security were executed in this State, and which agreement was consummated by the deposit of the money (in England,) to the order of the borrower. It was a contract partly made in this State and partly in England. And being actually made in reference to our laws, and to the rate of interest allowed here, it must be governed by them in the construction and effect of the contract as to its validity. An appeal to the Courts of this State was also contemplated by the parties if necessary to enforce a performance of the written agreement for the re-payment of the loan, although from the residence of the mortgagee in England, it might be necessary to send the money there to make a legal tender of the debt."

In the case of *Robinson* v. *Bland*, 2 Burr. 386, which is a leading case on the subject of the *lex loci*, Lord Mansfield holds the following emphatic language: "In every disposition or contract, where the subject matter relates locally to England, the law of England must govern, and must have

Sherman *et al. v.* Gassett *et al.*

been intended to govern. Thus a conveyance or will of land, a mortgage, a contract concerning stocks, must be all sued upon in England, and the local nature of the thing requires them to be carried into execution according to the law here.

These authorities come from sources of the highest respectability, and being consonant with the principles of equity and justice, would, in my opinion, justify this Court in coming to the conclusion that the mortgage being executed here, and this being the domicil of the mortgagors, the law of this State ought to govern in its construction. But as I conceive it is not necessary to place the decision on this point, I am willing to concede that if the mortgage was given to secure the payment of promissory notes which were void by the usury laws of Massachusetts, then this Court would be bound, however contrary to the principles of honorable dealing we might consider the defence, to decide that a contract, void where it was made or to be performed, was void here. The statute of Massachusetts in relation to usury, however, does not declare the contract void, but authorizes a suit to be sustained on it, and inflicts a forfeiture of a part of the debt, as a penalty for violating the Act; and points out a particular mode by which the forfeiture shall be enforced. On this statute the question arises, is this forfeiture a penalty? And if not a penalty, then are the means provided for its recovery addressed to the Courts of Massachusetts solely, or in other words, are the means of recovering the penalty, a part of the law of remedy, and consequently, confined to the *lex fori.*

The answer to the question, whether the forfeiture is not a penalty, which foreign Courts will not enforce, is not free from difficulty. If it is not a penalty, it closely resembles one, for a heavy forfeiture is imposed for the violation of the statute. Webster defines the word "forfeit," as follows: "To lose or render confiscable by some fault, offence or crime; to lose the right to some species of property or that which belongs to one." And under the noun he defines it, "that which is forfeited or lost, or the right to which is al-

Sherman *et al. v.* Gassett *et al.*

ienated by a crime, offence, neglect of duty or breach of contract, hence a fine, a mulct, a penalty. He that murders pays the forfeit of his life. When a statute creates a penalty for a transgression, either in money or in corporal punishment, the offender, who on conviction pays the money or suffers the punishment, pays the forfeit." It would seem that these definitions of the word "forfeit," would constitute the forfeiture provided by the Act of Massachusetts, a penalty. It was, however, inquired on the argument, if the Massachusetts Act inflicted a penalty for taking usurious interest that foreign Courts would not enforce, why will foreign Courts enforce the usury statutes of England, and some of the United States? The answer to this inquiry is, that in England, their statute absolutely forbids the making of any contract infected with usury, and renders the whole contract null and void; and so are the usury laws in several of the United States. A contract, being absolutely void where it was made, cannot become valid by transportation. It being once corrupt, it cannot become pure by change of time or place. As has been conceded, if the statute of Massachusetts had declared the contract void, no Court would enforce it. But having only inflicted a forfeiture or penalty on the person who attempts to violate it, it seems but reasonable to consider the forfeiture as a penalty, which the Courts of Massachusetts can alone render effectual.

But whether this question be decided in the affirmative or not, I think there is no difficulty in arriving at a satisfactory conclusion on the question, whether the forfeiture is not governed by the law of remedy, and can alone be enforced in the *lex fori*. The statute directs, that when an action shall be brought on any contract, tainted with usury, and it shall appear by special plea to that effect, that a greater rate of interest, &c., the plaintiff shall forfeit three fold, &c., and shall have judgment for the balance only. The Act points out a particular mode, by which the forfeiture is made available to the defendant, and if he neglects that mode, he loses the forfeiture. The mode of reaching the forfeiture is made by the statute a matter of substance, that cannot be

dispensed with in the Courts of Massachusetts. This circumstance alone renders the forfeiture a part of the law of remedy, which can only be enforced in the *lex fori.* To test this question, suppose this action had been commenced in a State where all special pleas are forbid by statute, and the defendant had specially plead the facts and statute of Massachusetts, would the Courts of such State, on demurrer have hesitated to decide that the special plea was bad? Such necessarily would be the decision. Again, suppose the defendant had plead the general issue, and had offered on the trial the statute of Massachusetts, with the facts going to establish the usury, would the Court have received the evidence? Certainly not, because the defendant had not complied with the mode required by the statute to entitle him to the forfeiture. If, however, the whole contract had been void, no such difficulty would be experienced; for no Court will sustain an action upon a void contract, and its invalidity would be matter of defence under the general issue. We have a similar Act in relation to usury, to that which exists in Massachusetts, with this difference, that our Act requires, when usury is pleaded and proved, that the defendant shall recover his full costs, and that two thirds of the forfeiture shall be paid into the treasury of the county in which the suit shall have been instituted; and each of the parties may be sworn as witnesses. Suppose that an action was brought on a usurious contract made in Illinois, in the Courts of Massachusetts, where by law, if the plaintiff recovers anything, he recovers costs; and where neither party can be witnesses, would the Courts of Massachusetts give effect to the forfeiture, by declaring that one third should be paid to the defendant, and two thirds to the county, and violate their own laws, by giving judgment against the plaintiff for costs, and also suffer the parties to be witnesses? There can, it is conceived, be but one opinion on this question. No sound lawyer would hesitate to reply in the negative. Can any good reason be given, why the Act of this State should not be enforced abroad, that will not apply to the usury law of Massachusetts? The objects of both Acts are

the same—the punishment of a party who exacts usurious interest. The penalty inflicted on the usurer is also the same, the mode of enforcing and disposing of the penalty only being different. The object of both laws, being in harmony, it would appear unreasonable that one statute should be enforced extra-territorially, and the other not. The usury Act of Massachusetts, not having declared the contract void, but having furnished a special mode, by which the forfeiture inflicted for its violation shall be recovered, must be considered as part of the law of remedy, and, consequently, can only be enforced in the Courts of Massachusetts.

The principle, that the Courts of one country will not enforce the law of remedy in another, is settled by numerous decisions. They will be found collected in 2 U. S. Dig. p. 795, title *"Limitations of Actions."*

In the case of *Ruggles* v. *Keeler*, 3 Johns. 267, to a plea of set-off, it was objected that it was barred by the Statute of Limitations of the State of Connecticut, where both parties resided when the set-off arose. Kent, Chief Justice, in delivering the Opinion of the Court, says: "Statutes of Limitations are municipal regulations, founded on local policy, which have no coercive authority abroad, and with which foreign or independent governments have no concern. The *lex loci* applies only to the validity or interpretation of contracts, and not to the time, mode, or extent of the remedy."

In the case of *Scoville* v. *Canfield*, 14 Johns. 337, which was debt on a judgment recovered in Connecticut, Spencer, Justice, in delivering the Opinion of the Court, says: "Although we notice the *lex loci* in construing and giving effect to the contracts between the parties, we must administer justice to them, according to our laws, and the forms prescribed by our legislature, or the usages of our Courts." The Judge also says, in the same Opinion: "There is another decisive answer as regards the Act pleaded. The plea admits the validity of the judgment declared on, and we are called on by the defendant not to apply the *lex loci* in the construction of the contract; but we are required to give effect to a law which inflicts a penalty for acquiring a right

to a chose in action. The defendant cannot take advantage of, nor expect this Court to enforce the criminal laws of another State. Penal laws are strictly local, and affect nothing more than they can reach." 1 H. Black. 135; *Foliot* v. *Ogden*, Cowper, 343.

The cases above referred to, although not precisely analagous, yet settle the principle, that the *lex loci* only governs in ascertaining whether the contract is valid, and what the words of the contract mean. When the question is settled, that the contract of the parties is legal, and what is the true interpretation of the language employed by the parties in framing it, the *lex loci* ceases its functions, and the *lex fori* steps in, and determines the time, the mode and the extent of the remedy.

That the Courts in one State will not enforce the usury laws of another, where the contract is not declared void, has recently been decided by the Supreme Court of Massachusetts, a tribunal whose opinions are entitled to the highest respect. From a careful examination of that case, it will appear, that they have put a construction upon their usury Act, in relation to the forfeiture set up in the pleas under consideration, which settles the question, that the Supreme Court of Massachusetts regard the forfeiture as applicable to the remedy, and can only be enforced in their Courts.

The case referred to, is *Gale* v. *Easton*, 7 Metc. 14. The Opinion of the Court sufficiently explains the nature of the case under discussion. Chief Justice Shaw, in delivering the Opinion of the Court, says: "By the law of New Hampshire, the contract, even though usury were taken or received upon it, was not void; it was so far legal that an action might be maintained on it with certain deductions. Act of February 12, 1791. By the second section, it is provided, that when usury is relied upon in defence, a special mode of trial may be offered by the defendant; that is, a trial by the oath of the parties, as formerly practiced under the law of Massachusetts, (Stat. 1783, ch. 55,) but which mode of proof and form of trial are not now allowed in this State. By the law of New Hampshire still in force, if the usury is thus proved,

a certain amount shall be deducted, in assessing the damages, from the principal and interest due on the note. These provisions apply only to the remedy, and of course can extend only to suits brought in New Hampshire, and can have no effect when a remedy is sought under our laws. The general rule is, that those provisions of law which determine the construction, operation and effect of a contract, are part of the contract, and follow it and give effect to it wherever it goes, but that in regard to remedies, the *lex fori,* the law of the place where the remedy is sought, must govern. We therefore cannot be governed by the law of New Hampshire, which professes only to regulate the remedy on a usurious contract. The law of Massachusetts, though somewhat analogous, cannot apply, because although the mode of enforcing the law against usury is by applying it to the remedy, yet, the law to be enforced· is the law of Massachusetts. The law of this State declaring what shall be the rate of interest, and what contracts shall be deemed usurious, also directs, when suits are brought, what deductions shall be made; but it is suits brought on such contracts, that is, contracts made in violation of its provisions."

In that case the plaintiff had judgment for his demand, although the usury was admitted by an agreed case.

The principle fairly deducible from these cases is, that the forfeiture provided for in the usury Act of Massachusetts is part of the law of remedy, and ought not to be enforced by the Courts of this State. The Court below, consequently, decided correctly in sustaining the demurrers to the defendants' pleas of usury.

The only other question presented by the assignment of errors is, whether the plea of part payment, was not a good plea. Payment in whole or part may undoubtedly be pleaded. It was objected on the argument that the plea was bad, because it commenced as a plea to part of the plaintiffs' demand, yet concluded by praying judgment. The plea is clearly informal, and had it been demurred to specially, it would have been bad. We are, however, of opinion that the plea substantially means to say, that defendants have paid

Sherman *et al. v.* Gassett *et al.*

$5000 to the plaintiffs, and that in regard to that amount they deny the plaintiffs' right to recover. In this view of the matter, the plea, although informal, is substantially good, and the general demurrer was improperly sustained. For this error, the judgment below must be reversed with costs, and the cause remanded with instructions to the Court below to permit the plaintiffs below to withdraw their demurrer and take issue on the plea, and then proceed to dispose of the case as shall be consonant to law.

The following dissenting opinion was delivered by

KOERNER, J. I regret that on one point in the case just decided I cannot agree with a majority of the Court. I mean as to the invalidity of the pleas of usury. The Court hold that, although the contract in question was made performable in Massachusetts, and usurious under the laws of that State, yet the Massachusetts law cannot be enforced in our State. I understand that this view is founded on the opinion, that the usury laws of another State, where they provide for a partial forfeiture of the debt, is penal in its nature, and also that it is only remedial, not affecting the contract, and that for both these reasons they cannot be enforced here.

It is not denied by a majority of the Court, but what the usury laws of the place govern the contract of the place, as far as regards the rate of interest claimed. It is also admitted, that where such laws declare` a usurious contract wholly void, such contract, by the comity of nations, cannot be enforced anywhere.

Now, if they were really criminal or penal laws in the proper sense, no other State but the one in which they were violated would take cognizance of them. Laws cannot be criminal in part, and not criminal in part; they must be either the one or the other. The case in 7 Metcalf, 14, does not go on the ground that the usury laws are penal, or criminal laws.

To maintain that we are bound to declare a usurious contract wholly void, when the laws of the contract make it so,

whereby the creditor is deprived of the whole of his claim, but that we are not bound to regard the law when it provides for a forfeiture only, by which the creditor loses but a part of his claims, seems to involve a singular inconsistency. It, in other words, involves the following remarkable syllogism: "The law everywhere avoids usurious contracts, when they are declared wholly void by the law of the place. This contract was void in part, and consequently it is good as to the whole."

The decision in Massachusetts proceeds upon the ground, that the usury laws of New Hampshire, (which are analogous to the laws of Massachusetts,) were remedial in their nature, and therefore could not be applied in Massachusetts. I dissent from this opinion with all due deference to the superior wisdom of that Court. If the usury laws of another country are remedial and do not affect the contract, then the usury laws of the State where the suit is brought must apply, because they are remedial. The interest stipulated in the Massachusetts case was usurious according to the law of New Hampshire, as well as that of Massachusetts. If the law is remedial in one, it must be in the other. It seems to me that there is a failure of proper distinction. A law of another State may affect the contract, and also the remedy, in presenting a peculiar mode of trial or a peculiar kind of evidence. As far as such a law operates upon the contract, in declaring it either wholly void, or partially so, or limits and modifies the essential rights growing out of it, it will be enforced by every other State; as far, however, as it affects the remedy, or the means of proceeding to enforce it, it will be disregarded if there is any conflict.

Now, in the present case, by the Massachusetts law, the plaintiffs, having acted in violation of law, must submit to a deduction of their claim, the amount of which deduction to be ascertained by a certain prescribed mode of computation, which every Court is able to make. As far as the law operates upon the *quantum* allowed to be recovered of the whole claim, it certainly affects the contract most materially. If the Massachusetts law, however, prescribes rules as to evi-

Sherman *et al. v.* Gassett *et al.*

dence in such cases, or the forms of proceeding, or the sum forfeited, which are inconsistent with our remedial laws, they will be disregarded, and their place will be supplied by our own.

This view of the case, thus briefly, and I fear imperfectly expressed, seems to me to be sustained by what is said by the Supreme Court of the United States in the case of *De Wolf* v. *Johnson,* 6 Cond. R. 141. In that case the question arose on a contract originally made in Rhode Island, where the usury law did not avoid the contract, or the securities given for it, but only declared a forfeiture of one third of the principal, and all of the interest of the loan, as a penalty to be recovered by information or action of debt. This law was set up in Kentucky, where such loan, it was contended, had been secured by mortgage. On page 151, the Court say in reply to the argument that the Rhode Island contract was wholly void: "The law of Rhode Island certainly forbids the contract of loan for a greater interest than six per cent., and so far, no Court would lend its aid to recover such interest. But the law goes no further; it does not forbid the contract of loan, nor preclude the recovery of the principal under any circumstances. The *sanctions* of that law, are the loss of the interest and one third of the principal, if sued for within one year. On what principle could this Court add *another* to the penalties declared by the law itself." I have italicised some of the words just transcribed, in order to make the applicability of the whole passage more apparent.

The policy of the usury laws in general, and the impropriety or iniquity of the decree in this particular case, are subjects on which I am not called upon by anything in the record to express an opinion.

Justices CATON and THOMAS concurred in the dissenting opinion.

*Judgment reversed.*