**W. I. Grinestaff, Appellee, v. New York Central Railroad, Appellant.**

**Gen. No. 8,264.**

591

Original opinion filed January 24, 1929. Opinion modified and refiled April 17, 1929.

REARICK & MEEKS, for appellant; S. C. MURRAY, of counsel.

HUTTON & CLARK, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an action brought by appellee to recover damages for injuries resulting from an automobile collision which occurred at a railroad crossing in Hammond, Indiana, on November 26, 1927. There were various counts in the declaration charging negligence, and the fifth count charged defectively a wanton and wilful injury in that appellant was in the possession of and operating a line of railroad; that one of said tracks, at grade, intersected and crossed at right angles a paved public street called Kennedy avenue, which ran north and south, and from which crossing the tracks of appellant extended west for a distance of 200 feet and from thence turned and extended to the southwest for a distance of 1,500 feet, where it connected with other railroad tracks. Also, that at a place 400 feet south of said crossing, on said avenue, said highway was crossed at right angles by four other railroad tracks; that Kennedy avenue for three years next preceding the accident, was traveled in the nighttime by an average of one hundred vehicles per hour; that at said crossing there were stationed no gates, bells or like means of warning, and that in the nighttime, and for three years preceding, to the westward from said avenue there were, at distances ranging from one-fourth mile to two miles, one thousand lights upon moving and standing engines and cars, buildings and posts, ranging in height from 9 feet to 15 feet from the ground, which lights were likely to deceive the traveling public using said highway and crossing, not knowing or determining whether any trains were traveling upon appellant's tracks over said crossing. And the count proceeds: that said conditions created and constituted an extrahazardous condition, well known to appellant; that on said date and in the nighttime and in the dark, appellee was traveling upon said Kennedy avenue from the south and riding in his said automo-

bile in a northerly direction toward and at said crossing; that appellant, by its servants, then operated an engine and tender from a point 1,500 feet southwest from said crossing, running backwards with the tender in front thereof, upon and across said Kennedy avenue crossing; that upon said engine so approaching said crossing, there was on the easterly end only a small light 6 inches in diameter, not of sufficient size and intensity to be a sufficient warning of the approach of the engine and tender, which insufficiency of said small light and facts aforesaid were well known by the servants of appellant, or would have been known to them by the exercise of due care on their part; that appellant, by its servants, from a point 500 feet westerly of said Kennedy avenue wilfully, wantonly and negligently, at a high and dangerous rate of speed of 30 miles per hour, without sufficient warning by whistle (or bell or other warning sound) from said engine, or a sufficient light from the easterly end of the tender and engine, backed and propelled said engine over said crossing, and in consequence thereof, said engine collided with said automobile and appellee was not apprised of the approach of said engine, and thereby he was injured in person and property. In other words, the fifth count charged:

"The defendant, by its servants, . . . wilfully, wantonly and negligently, . . . backed and propelled said engine over said crossing, and in consequence thereof, said engine collided with said automobile . . . and thereby he (the plaintiff) was injured," etc.

The accompanying circumstances were that the speed being 30 miles per hour, on a dark night, over a crossing where one hundred vehicles passed every hour, with a small light not over 6 inches in diameter at the front end of the tender, and with an electric light facing southwest from the front end of the engine, with a thousand lights upon moving and standing engines and posts from 9 to 15 feet in height to the west and

northwest, and giving no warning by whistle or bell, the servants of defendant ran this engine backward and injured the plaintiff. The fifth count alleges no care or caution on the part of plaintiff.

The cause was presented to a jury and at the close of appellee's case and at the close of all the evidence appellant moved the court to exclude the fifth count from consideration of the jury and for an instructed verdict upon said fifth count, which was refused, and there was a verdict in favor of appellee in the sum of $5,000. Motion for new trial was made and overruled and judgment entered upon the verdict, from which appellant has appealed.

One of the chief contentions upon this appeal is, whether the proofs submitted were sufficient to establish a wanton and wilful injury. Other errors are pointed out and it is strongly contended that appellee was guilty of gross negligence in attempting to cross the tracks in advance of a moving engine, and that the verdict and judgment can only be sustained under the fifth count. We shall, therefore, give attention to the fifth count and the proofs thereunder.

Hammond is a city of sixty to seventy thousand population and the crossing in question within 150 or 175 feet from the railroad switch yards and in an open territory free from buildings and obstructions, but covered by a network of railroad tracks. The territory between the tracks of the Michigan Central and appellant are triangular in form and all is level ground and free from any obstructions, except about 300 feet west and south from the crossing on appellant's tracks there is a signal shop about 16 by 20 feet (one story) high, and further west some small buildings. There were some lights on tanks to the northwest of the crossing and other lights to the west and northwest one-fourth to one-half mile away. The concrete on Kennedy avenue at the Michigan Central

crossing was 48 feet wide and at appellant's tracks 28 feet in width at the north side.

On the night in question appellant's freight train from the east had stopped about eighteen car lengths east of the crossing in question, cut off sixty cars and gone forward over this crossing; hauled the sixty cars into the Gibson yards, detached the engine and tender, which then ran backwards to the northeast, over the curve, past the signal shop, thence nearly east towards Kennedy avenue crossing to connect with appellant's train left standing east of the crossing. There is no testimony in the record offered by appellee tending to show in any respect the speed of the engine and tender in its backward course. There is no testimony in the record tending to show the amount of road traffic over this highway, except that appellee had crossed at this same place earlier in the week and in the preceding week, and had lived at Hammond and worked upon the roads and was then working at Hammond and driving a team upon the roads, although his home was at Hoopston.

The witness Linton also testified that he had been over the road one hundred times; that it had been paved ten or twelve years and leads from Indiana Harbor to Ridge Road, was a main thoroughfare and used constantly, and the witness stated: "I can safely say there are a thousand cars go across there in a day's time." Only two cars were seen upon the street on the night in question and there are no proofs as to what the traffic is in the night.

That the territory was much congested by railroad tracks was shown by appellee's testimony that while he was driving from where he lived in Hammond to where he worked that he crossed seventy-five railroad tracks. He did not know whether these tracks were main line or side tracks. North of the crossing in question another railroad crossed Kennedy avenue on a viaduct 1,500 feet north of the place of the accident.

Between these points another railroad also crossed the avenue. Appellant had another main line of railroad entering the Gibson yards from the northeast, which went northeasterly and southwesterly about 1,500 feet to the northwest of the place of the accident. The oil tanks and lights were all to the west and north of the latter railroad. There were no oil tanks, lights or obstructions between it, Kennedy avenue, and the tracks upon which the engine and tender engaged in the accident were running. The Gibson Railroad yards extended southwesterly and westerly for about a mile and a half from a point about 200 feet west from the point of injury.

Appellee, with his Ford tudor sedan, was driving north on Kennedy avenue at 1:00 or 1:30 at night. Mary Burnett sat behind appellee on the rear seat and Matt Burnett beside her to the right. Matt Burnett and Mary Burnett had been married in Gary, Indiana, about ten miles from the place of the accident, at 8:30 the preceding evening and the party had left Gary in the car at 9 p. m. and had been riding continually since leaving Gary. They had not been out of the car and were on their way back to Gary. While going over the crossing in question, the engine and tender backed into appellee's car, demolishing it, causing the death of Ida Cobb and inflicting serious injuries upon appellee. Appellee contends that he places reliance upon each count in the declaration and that he fully established each count. The cause went to the jury on all the counts in the declaration and there was a general verdict. If appellee, therefore, has not established the fifth count and made out a case of wilful or wanton injury, the verdict cannot stand. The injury could not have been caused wilfully or wantonly and negligently at the same time. (*Chicago City Ry. Co. v. Jordan,* 215 Ill. 390; *Walldren Express & Van Co. v. Krug,* 291 Ill. 472; 45 Corpus Juris, **674,** 1090 and 1091; *Chicago, R. I. & P. Ry. Co. v. Hamler,*

215 Ill. 541; *Kalinski v. Williamson County Coal Co.,* 263 Ill. 265; *Goodman v. Chicago & E. I. Ry. Co.,* 248 Ill. App. 128, 137; *Stoike v. Bonasera,* 243 Ill. App. 281, 286; *Burns v. Chicago & A. R. Co.,* 229 Ill. App. 170, 186.)

In *Stoike v. Bonasera, supra,* the court say on page 286:

" 'Negligence and wilfulness are as unmixable as oil and water. "Willful negligence" is as self-contradictory as "guilty innocence." ' Salmond says, 'No result which is due to carelessness can have been also intended. Nothing which was intended can have been due to carelessness.' Salmond on Jurisprudence, p. 409 (7th Ed.)"

In *Burns v. Chicago & A. R. Co., supra,* the court say on page 184:

"In *Chicago & E. I. R. Co. v. Hedges,* 105 Ind. 398, 7 N. E. 801, the declaration, after mentioning certain obstructions to the view of one approaching said crossing from the north, and further alleging the conduct and due care of the plaintiff, charged that the defendant, by its servants and agents, carelessly, negligently, purposely, wilfully and recklessly caused said train of cars to approach said crossing, and negligently, carelessly, purposely, wilfully and recklessly omitted, by reason of their having detached and driven away the said locomotive engine, as aforesaid, while so approaching said crossing, to give any signal by ringing the bell or sounding the steam whistle, or otherwise, and that by reason of said careless, negligent, wilful and reckless management of said train of cars, they were thereby driven and run against and upon said Daniel T. Hedges and thereby caused his instant death. The court says that: 'Notwithstanding the frequent use of the words "purposely" and "wilfully," the pleading does not charge that the defendant purposely or wilfully killed the intestate, or purposely or wilfully ran the train upon him, or purposely or wilfully

caused it to be run upon him. The allegations amount to no more than a charge of killing through negligence.' *Ohio & M. Ry. Co. v. Selby,* 47 Ind. 471, 17 Am. Rep. 719; *Cincinnati & M. Ry. Co. v. Eaton,* 53 Ind. 307; *Pennsylvania Co. v. Sinclair,* 62 Ind. 301; *Indianapolis & V. Ry. Co. v. McClaren,* 62 Ind. 566.''

It is apparent in the *Hedges* case that under the law of Indiana, where the injury occurred, the fifth count, as charged, would not be held to have charged a wilful and wanton injury. However, the count was not demurred to and under the authority of *Walldren Express & Van Co. v. Krug, supra,* and 45 Corpus Juris, page 1091, *supra,* together with the attending circumstances charged, the fifth count was sufficient to charge a wilful and wanton act.

It has been held specifically that on a count for wilful and wanton injury the pleader may waive the wilfulness of the charge and recover as for negligence, on the ground that the greater includes the less and in *Marquette Third Vein Coal Co. v. Dielie,* 208 Ill. 116, 119, the court held: ''It is the practice in this State to try personal injury cases under declarations the separate counts of which charge negligence and wilful and wanton misconduct; (*Chicago Terminal Transfer Railroad Co. v. Gruss,* 200 Ill. 195); and although the rules of law as applied to the separate counts of such a declaration are not the same, it has never been thought for that reason such counts could not be joined in the same declaration.''

The rule is the same as in *Reed v. Peoria & O. R. R. Co.,* 18 Ill. 403, 404, where it is held: ''The plaintiff, in actions of trespass, may join counts for trespass to land and trespass to person and to personal property, and in such case, each count being an independent cause of action, he may recover upon such counts as are sustained by proof, although he fail as to others.'' Since that case was decided the Legislature has abolished the distinction between trespass and case as to

the form of the action, but the act does not abolish the substantive law relating to either. In *Blalock v. Randall,* 76 Ill. 224, 228, it is held:

"We do not see that the statute abolishing the distinction between the actions of trespass and trespass on the case changes the rule, as is contended by appellee. The statute does away with the technical distinction between the two forms of action, but does not effect the substantial rights and liabilities of parties, so as to operate to give any other remedy for acts done under legal process issuing from a court or officer of competent jurisdiction than before existed, an action on the ground of malice and want of probable cause." And in *Chicago Title & Trust Co. v. Core,* 223 Ill. 58, 63, the court holds: "The statute does away with the technical distinction between the two forms of action but does not affect the substantial rights or liabilities of the parties, and the averments and proof necessary to sustain either cause of action are the same as at common law."

Appellee, Matt Burnett and Mary Burnett each testified that it was a dark, cold night; that when they approached the Michigan Central tracks, 350 feet to the south there is a large red sign in the center of the road and the car was stopped; that they drove on the right-hand side of the road and were watching all along for trains after crossing the Michigan Central tracks and proceeding north; that the lights on the Ford car were working perfectly and the car proceeded at a rate of ten to twelve miles per hour. Appellee and each of the Burnetts testify that after crossing the Michigan Central tracks each looked both east and west continually for signs of a train upon appellant's railroad. Matt Burnett testified it was so dark one could see nothing. All of them knew they were coming to railroad tracks because the lights on their automobile showed the rails plainly, one states 150 feet away and another 75 feet away, and all could see the

signboard with a light on it marked "Railroad Crossing, Danger." The car was slowed down to eight to ten miles per hour and appellee testifies that all along between the two crossings he was looking from east to west and saw nothing and just a few feet before his car came to the south rail he again looked in both directions and saw nothing. Just as his front wheels got over the rail he looked west and a big black object, like a building, loomed up and struck them. In most particulars appellee is corroborated by the witnesses Matt Burnett and his wife, Mary. All saw the rails on the track, the danger sign and knew they were coming to a railroad and knew of the existence of the railroad as they had traveled the road before. All of them testify to the same facts with a remarkable corroboration in detail and with successive reiterations. All testify that they heard no bell rung or whistle blown until after the accident, and that there was no light of any kind at the rear end of the tender.

Appellee presented a witness, Russell Linton, who, accompanied by Roberta E. Gardner, at the time of the accident was driving a Studebaker car south on Kennedy avenue, and who saw the engine and tender just as Linton came under the subway, 1,500 feet north of the place of the accident. Linton testified that he saw the headlight plainly and the engine just before it backed to the crossing, when he was 1,500 feet away. He also upon approaching the crossing saw a railroad cross-arm with a light on it on the right-hand side of the road, similar to the one on the south side of the intersection on the east side of the road. He further testified that he did not see a small white bull's eye or blizzard light burning on the east end of the tender; and testified that when he first came under the viaduct he was conscious that an engine was moving upon the tracks from the fact that its movement was shutting off the lights. Linton had testified that no whistle was blown or bell sounded.

Later he modified his testimony by identifying a written instrument he had made to the effect that if a whistle was blown or bell rung he did not hear either. Linton was 23 years of age, a student at Purdue University studying electrical engineering, and in his vacations employed by the Inland Steel Company of Gary.

Roberta E. Gardner testified she was riding with the witness Linton, sitting at his right. When they came out of the viaduct she saw the tender of the engine. She states she did not see the headlight of the engine and heard no whistle blow or bell ring. She did see the headlights of appellee's automobile and saw the tender of the engine come upon the highway 1,500 feet away.

The declaration charged and the testimony confirmed that on the east end of the tender, facing the highway, there was a bull's eye light and that it was burning, but it is charged that it was not of sufficient size and intensity to be a sufficient warning of the approach of the engine and tender. This substantially covers the testimony of appellee upon which the count for a wilful or wanton injury is based and upon which the court must determine whether the fifth count should have been withdrawn from the consideration of the jury.

There was the further testimony of the railroad employees, the engineer, fireman and brakeman, who testified that the light to the rear of the tender was burning, and that it could be seen on the night in question for a distance of 50 feet, and on a clear night for a distance of half a mile. This testimony further showed that the whistle was blown at a point 350 feet west from the crossing, two long and two short blasts; that the automatic bell was being rung continually as the engine approached the crossing and until the accident, when the engineer shut it off. The engineer testified that the first knowledge he had that there was an auto-

mobile anywhere near him was when the fireman stated that a car was coming fast and he shut off his engine and drifted and as they came near to the crossing the fireman said, "He is going across." The engineer states that he immediately put on the brakes and about that time the crash occurred. The conductor went down to the yards with the sixty cars, but did not return to the train. He testifies that when he left the engine the light at the rear of the tender was burning. There is no testimony in the record as to the speed of the engine and tender. It is peculiar in this case that appellee should charge in his declaration that a light was burning at the rear of the tender, but not of sufficient intensity, and then furnish testimony that there was no light on the tender at all. In the end, even the testimony of appellee's witnesses is modified to show the presence of the light. It appears to this court impossible that Linton, when he was 1,500 feet away, could see and sense the presence of an engine and tender before it arrived at the crossing, or just as it was coming up to the avenue, and appellee could know nothing about it when the tender was not over 10 feet distant from him with a light burning at its rear. No statute or ordinance of the State of Indiana is cited or pleaded attaching any duty or obligation upon the part of appellant to safeguard this crossing. It is contended by appellee, that the injury having occurred in another State, that the courts of Illinois will assume that the law of the foreign State is the common law, citing: *Opp v. Pryor,* 294 Ill. 538, 541; *Woodbury v. U. S. Casualty Co.,* 284 Ill. 227; *Schlee v. Guckenheimer,* 179 Ill. 593, 596, and *Noyes v. Hines,* 220 Ill. App. 409, 415. This is a correct statement of the rule, but it is also the rule that one State will not enforce the laws of a sister State to recover a penalty for an act committed in a sister State. (*Sherman v. Gassett,* 9 Ill. 521; *Raisor v. Chicago & A. R. Co.,* 215 Ill. 47; *Missouri River Tel. Co. v.*

*First Nat. Bank of Sioux City,* 74 Ill. 217; *Shedd v. Moran,* 10 Ill. App. 618.)

It is in accordance with the public policy of this State, in civil suits for injuries caused in Illinois by wilful and wanton acts, to permit plaintiffs to recover punitive damages that others may be warned to avoid such transgressions. It is not in accord with the public policy of this State to allow such damages where the wilful and wanton acts were committed in another State. In the *Sherman* case, *supra,* the defendants in a civil suit sought the advantage of a forfeiture for usury under the laws of Massachusetts. In *Missouri River Tel. Co. v. First Nat. Bank of Sioux City, supra,* plaintiff sought to recover from an Iowa Bank, sued in this State, double the sum as a penalty of the amount of usurious interest collected by defendant from plaintiff in the State of Iowa, under a penalty clause in the laws of the United States. The court says: "There can be no pretense that any law of this State has been violated, as it is averred that the transaction occurred beyond the limits of the jurisdiction of the courts in this State. And it is equally true that both the governments of the United States and Iowa are wholly independent of this State. They severally have all of the attributes of sovereignty essential to the enactment and enforcement of laws for the government of their citizens within the limits of their constitutions. And in accordance with long settled rules of law, this State cannot enforce their criminal or penal laws. See *Sherman v. Gassett,* 4 Gilm. 521."

In *Raisor v. Chicago & A. R. Co., supra,* the court held:

" 'Appellant's counsel rely on *Huntington v. Attrill,* 146 U. S. 657, and quote the following from the opinion in that case: "The rule that courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the State for

the recovery of pecuniary penalties for any violation of statutes.'' Minor, in his work on Conflict of Laws, (p. 22, note 3,) criticises much that is said in the opinion, and on page 24 says: ''So far as private international law is concerned it matters not whether that punishment is inflicted through the instrumentality of an ordinary prosecution by the State's officers for a fine, or through the medium of a civil action by the party injured for penal damages. In substance it is an act of punishment. It is punitive in either case.'' Such seems to be the view of the court in *Missouri River Tel. Co. v. National Bank,* 74 Ill. 218.' ''

There is no rule of common law determining the conflict of laws between the states or permitting a citizen of Indiana to recover in this State punitive damages for a wilful and wanton injury committed in another State. The declaration charges that the engine was running at the rate of thirty miles per hour. This is not proven. It is charged that one hundred vehicles per hour pass over this crossing in the nighttime. There was no proof to this effect. Only two vehicles were on this highway on the night in question during an interim of fifteen to twenty minutes. The statutes of this State would have required appellant to have blown the whistle or to have rung the bell upon approaching the crossing in question. Whether appellant was derelict in this respect or even was running its engine at too high a rate of speed would not have been sufficient, standing alone, to convict appellant of a wilful or wanton injury. (*Browne v. Siegel, Cooper & Co.,* 191 Ill. 226; *Powell v. Kempton,* 231 Ill. App. 380, 384; *Lamarre v. Cleveland, C., C. & St. L. Ry. Co.,* 217 Ill. App. 296, 305.)

It was held in *Morgan v. New York Central R. Co.,* 327 Ill. 339, 343, that the negative testimony of witnesses who did not hear the whistle sounded ''did not tend to raise an issue of fact as to whether the whistle was blown or not, with the positive testimony that the

whistle was sounded.'' It must be concluded as a fact, from the record in this case from the testimony of the engineer, fireman and brakeman, that the whistle was blown two long blasts and two short blasts, and that the bell was ringing continuously, on the approach to the crossing, sufficiently to show that appellant's employees were attempting to warn appellee and others of danger. Further, the testimony was that the blizzard light at the rear of the tender was an electric light, four inches in diameter, with a reflector larger than the headlight on an automobile. In any event, it is not shown that any such statutory duty rested upon appellant in the State of Indiana. The most that appellee could have charged and upon which he could have maintained a recovery, would have been negligence at common law, unless appellee had pleaded some rule or statute of the State of Indiana.

But appellee complains in his declaration that ''there were stationed there no gates, watchmen, bells or like means of warning to appraise any such members of such public, so traveling along said avenue,'' etc., and thereupon appellee contends that it was an extrahazardous crossing and appellant wilfully or wantonly injured appellee. That result does not follow. It may be that negligence might result from some such inactivity, but a wilful and wanton injury comprehends a different state of facts. As Mr. Justice Hurd said in *Lamarre v. Cleveland, C., C. & St. L. Ry. Co., supra:*

'' 'In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result. In order to establish wantonness it is not necessary to

show an entire want of care. The violation of a statute does not constitute a wilful wrong. A wilful injury will not be inferred when the result may be reasonably attributed to negligence or inattention.' 29 Cyc. 510.''

Appellee stopped his car at the Michigan Central crossing 350 feet to the south. He knew that it was a dark night and if it was as dark as the witnesses contend, it was appellee's duty, when he saw the danger sign and knew he was approaching a railway crossing, to stop and listen. Many of the facts in this case are subject to the rules laid down in *De Bow v. Cleveland, C., C. & St. L. Ry. Co.,* 245 Ill. App. 158, 164:

"If a person looks he is supposed to look for the purpose of seeing, and if the object is in plain sight and he apparently looks but does not see it, it is manifest he does not do what he appears to do. The law will not tolerate the absurdity of allowing a person to testify that he looked and did not see the train when the view was unobstructed and where, if he had properly exercised his sight, he must have seen it. Such is the language of the courts in variant form in the following cases: *Chicago, P. & St. L. Ry. Co. v. De-Freitas,* 109 Ill. App. 104–106; *Chicago & A. R. Co. v. Vremeister,* 112 Ill. App. 346–351; *Chicago, R. I. & P. Ry. Co. v. Jones,* 135 Ill. App. 380–384; *Toledo, St. L. & W. R. Co. v. Gallagher,* 109 Ill. App. 67; *Kennedy v. Alton, G. & St. L. Traction Co.,* 180 Ill. App. 146–149. There may be such inherent improbability in the testimony of a witness as to authorize a court or jury to disregard it, even though there is no contradictory evidence by other witnesses. *Kuehne v. Malach,* 286 Ill. 120; *Stephens v. Hoffman,* 275 Ill. 497; *Kennedy v. Modern Woodmen of America,* 243 Ill. 560.''

The conditions on the night in question must be determined by the proofs submitted by appellee's witness, Linton. The case then stated is, without the proofs on the part of appellant, that appellant's em-

ployees were moving an engine and tender along a known railway toward a crossing at a very slow and moderate rate of speed. They were moving backward and in view of the public highway. There was a bull's eye light at the back end of the tender that could be seen for 50 feet. The engine and tender made a grinding and rumbling noise that one at the crossing could not avoid hearing if he had stopped and listened, at any time when the engine was within 50 or 100 feet away from the crossing. Appellant's employees, it may be presumed, saw appellee with his car approaching and relied and depended upon the fact that appellee would stop at the crossing as the lights and danger signal gave him warning. It was the duty of appellee to stop at the danger signal at the crossing until he could see and know that the crossing was clear. As the court said in *Bartlett v. Wabash R. Co.*, 220 Ill. 163, 166: "Daily was not required to stop the train so soon as he saw Stampfer upon the track, but had the right to assume at that time he would act as a reasonably prudent man and leave the track to avoid being run over by the moving train, and so soon as Daily recovered Stampfer did not intend to leave the track and was in a perilous situation, he was only required to use reasonable care to avoid injuring him."

It is elementary in this State that it is the duty of one approaching a railroad crossing, a known place of danger, to use due care and caution—to stop, look and listen to see that the track is clear, and that it is not the duty of railroads to stop their trains at crossings except to avoid a known or probable accident. If darkness entirely obliterates view, the traveler on the highway should stop and listen. To contend that failure to ring a bell or blow a whistle, even under the conditions stated with no other attending circumstances, argues a wilful and wanton injury, is no more forceful than the contention that appellee's failure to stop, look and listen at the crossing argues a wilful

and wanton purpose on the part of appellee to derail the train.

This case differs from *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, 21, in which the engineer, running a train in a heavy fog, knowingly disobeyed a plain signal of the road, upon which signal all traffic on the road had the right to rely, and wantonly precipitated a collision and caused injury. This case differs materially from *Neice v. Chicago & Alton R. Co.*, 254 Ill. 595, 603, and kindred cases, in that the crossing in question in the case at bar was not a place provided by the railroad for the use of the public in the transaction of its business, where persons have a right to be for legitimate purposes. The crossing in question was a place provided for the mutual accommodation of appellant and those using the public highway, in which each have mutual rights and in which each was bound by mutual obligations.

In *Brown v. Illinois Terminal Co.*, 319 Ill. 326, 331, the rule is stated: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness of ordinary care. (*Lake Shore & Michigan Southern Ry. Co. v. Bodemer*, 139 Ill. 596; *Heidenreich v. Bremer*, 260 id. 439; *Illinois Central Railroad Co. v. Leiner*, 202 id. 624.)"

It will not do to say that the State should have required a watchman, gates or bells at this crossing, as under the laws of this State the administration had a right to do. That is an administrative function with which courts have nothing to do. What is the evidence or facts and circumstances proven in this case that brings appellant within the rule of having committed a wilful or wanton injury? No proofs of any kind are

offered by appellee tending to show how or in what manner appellant's employees operated the engine, its speed or other directions, except witnesses testify that the whistle was not blown or the bell rung and the night was dark. The whole situation presents a case, regardless of the specific acts of negligence charged, upon which we do not pass, where appellant's employees relied and depended upon appellee stopping at the crossing for which he, evidently, slowed down the speed of his car and when they found that appellee was not going to stop at the crossing appellant's employees did everything in their power to avert the injury; they stopped the engine before it had run its length. We find no proofs in this record which warrant the court in sustaining the verdict and judgment, based upon a wilful or wanton injury. The judgment is based upon the fifth count charging a wilful and wanton injury, as well as upon the other counts. That constitutes error. The court should have withdrawn the fifth count from the consideration of the jury. We hold under the proofs submitted that appellee did not establish a cause of action on the fifth count.

But it is contended that "the rule has long been established that common law and wilful counts may be joined and that if the evidence supports one count which is good, the fact that the evidence did not support the other counts is not a ground for reversal," citing Corpus Juris, vol. 45, page 1090, sec. 663; *Scott v. Parlin & Orendorff Co.*, 245 Ill. 460; *Olson v. Kelly Coal Co.*, 236 Ill. 502, and *Colesar v. Star Coal Co.*, 255 Ill. 532. In the citation from Corpus Juris no references are made to any of the cases in this State, and the most that can be gleaned from that authority is that plaintiff is entitled to have both theories submitted to the jury. In *Scott v. Parlin & Orendorff Co., supra,* the declaration consisted in counts for negligence only; and in *Olson v. Kelly Coal Co., supra,* and *Colesar v. Star Coal Co., supra,* the declaration in each

case consisted of counts charging a statutory violation of the Mining Act, joined with counts of negligence. In the violation of the Mining Act, under the terms of the act the counts constructively term the charge a wilful violation of the act, but a wilful and wanton injury was not charged in either case cited and all of the counts in each declaration were of equal standing and import and proven by the same set of facts. It would seem to be elementary that in a declaration charging negligence, and containing a wilful and wanton count, mere proof of negligence would not warrant a verdict including punitive and exemplary damages. The rule for which appellee contends does not apply in a case where the declaration alleges separate and independent offenses in the different counts. In *Cotter v. Boston, R. B. & L. R. Co.*, 237 Mass. 68, 129 N. E. 426, 427, the court held: "Tt is argued by the plaintiff that wantonness and recklessness include negligence. Under our decisions, however, the difference between negligence, whether ordinary or gross, and conduct which is wilful, wanton in reckless disregard of the rights of others, is a difference in kind and not merely one of degree." In *Cleveland, C., C. & St. L. Ry. Co. v. Miller*, 149 Ind. 490, 49 N. E. 445, 451, the court said: "There can be no middle ground between wilfulness and negligence, for, as we have seen, the authorities affirm that each of these elements is the opposite of the other. Consequently, when the facts in a given case show that the injury of which the plaintiff complains is the result of the negligent act or conduct of the defendant, then the fact that such negligence may be said to be of such a degree as to be considered 'gross negligence' cannot support a charge that the injury was wilfully or intentionally inflicted by the party accused. This rule seems to be firmly settled in this jurisdiction." The court citing numerous cases. A verdict finding the defendant guilty of negligence in effect is a verdict finding the defendant **not** guilty of wilfulness and wantonness. *Jenearu v*

*Chicago & I. Traction Co.,* 306 Ill. 392, 398. The verdict is not responsive to the issues in the case. The red light at the Michigan Central crossing, requiring cars to stop, indicates there was some public supervision over the crossings upon this highway. If there were one thousand lights from 9 to 15 feet high from the ground, on moving and standing cars, building and posts to the westward and northwestward of appellant's moving engine, and the ground was level, it is not made plain why appellee, by the engine passing the lights, did not have the same opportunity to discover the engine moving that made Linton aware of its movement 1,500 feet away. Some of these lights were not over 1,300 feet, one-fourth of a mile distant. If there were but a part of one hundred engines in motion that night in the vicinity of appellee in the yards in question, it is not strange that appellee did not hear a particular whistle blown or bell rung. There must have been a continuous hum of bells and whistles from which appellee, over the numerous track crossings, should have felt a greater sense of danger. The verdict being general and finding the defendant guilty, as charged in the declaration, which contains the separate and independent charge of a wilful and wanton act, we hold that it was reversible error for the court to deny appellant's motion to withdraw the fifth count from the consideration of the jury.

Such other errors as appellant assigns which have merit doubtless will be corrected upon another trial. For the reasons stated, the judgment of the circuit court of Vermilion county is reversed and the cause remanded for another trial.

*Reversed and remanded.*

On an opinion heretofore filed *[ante,* p. 162] and a petition for rehearing presented, the court modifies the opinion and adheres to the conclusion there reached, and the petition for a rehearing is denied.